UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| OGHENETEGA EMUVEYAN,<br><br>     Plaintiff,<br><br>v.<br><br>STEVE EWING; GENEVA ROCK PRODUCTS INC., a Utah corporation; and CLYDE COMPANIES, INC., a Utah corporation,<br><br>     Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION REGARDING SPOLIATION OF DOCUMENTS (DOC. NO. 46)**<br><br>Case No. 2:19-cv-00616-HCN-DAO<br><br>Judge Howard C. Nielson, Jr.<br><br>Magistrate Judge Daphne A. Oberg |

Before the court is Plaintiff Oghenetega Emuveyan's Motion Regarding Spoliation of Documents ("Mot.," Doc. No. 46.) The court heard argument on the motion on May 17, 2021 and ordered supplemental briefing as to the possibility of sanctions other than a default judgment or finding of liability. After reviewing the briefing, supplemental briefing, and oral arguments, the motion is GRANTED in part and DENIED in part for the reasons stated below.

## BACKGROUND

Mr. Emuveyan brought this action against Steve Ewing, Geneva Rock Products Inc. ("GRP"), and Clyde Companies, Inc., alleging, in part, they discriminated against him and treated him disparately based on his race and national origin, created a hostile work environment, wrongfully terminated him, and retaliated against him. (Compl., Doc. No. 2-1.) Mr. Emuveyan was a mixer truck driver from February 2014 until his termination on December 8, 2017. (Mot. 2, Doc. No. 46.) Mr. Emuveyan, who is black, alleges the defendants subjected him to different performance standards than his white coworkers and retaliated against him when he complained of the discrimination. (*Id.*) Further, he argues the defendants fired him for minor incidents while

1

his white coworkers were not disciplined for more serious accidents.  (*Id.* at 15.)  Mr. Emuveyan

characterizes the defendants' claim that he was terminated for three accidents as a false pretense.

(*Id.* at 6.)  The defendants deny any discrimination and claim every employment action was

taken "for legitimate non-discriminatory and non-retaliatory business reasons."  (Answer 7–8,

Doc. No. 9.)  Further, they allege they took "prompt, effective remedial action that was

reasonably calculated to end all discrimination against Plaintiff, if any, of which they were aware

or should have been aware."  (*Id.* at 8.)

It is undisputed that Mr. Emuveyan notified Bryan Flake, GRP's human resources

("HR") director, on December 19, 2017, that he intended to bring a claim of race discrimination.

(*See* Mot. 4, Doc. No. 46.)  Mr. Emuveyan filed a charge with the Equal Employment

Opportunity Commission ("EEOC") and the Utah Antidiscrimination and Labor Division

("UALD").  (*Id.*)  The defendants do not dispute that they received the Mr. Emuveyan's charge

on January 4, 2018.  (*See id.* at 4–5.)

In his motion, Mr. Emuveyan seeks sanctions for the defendants'[1] spoliation of what he

deems critical evidence.  (*Id.* at 15–16.)  Mr. Emuveyan claims the defendants not only failed to

preserve documents but improperly altered and created documents after becoming aware of Mr.

Emuveyan's claim.  According to Mr. Emuveyan, the defendants spoliated five different

categories of documents: Mr. Emuveyan's discipline record, discipline records of other drivers,

Mr. Emuveyan's termination form, human resources meeting notes, and GRP's employee

---

[1] Mr. Emuveyan refers to the defendants generally as spoliators, without specifying which
defendant is responsible.  (Mot., Doc. No. 46.)  The defendants assert there is no wrongdoing
alleged against Clyde Companies, Inc., which is the parent company of GRP.  (Defs.' Mem in
Opp'n to Pl.'s Mot. Regarding Spoliation of Docs. 1 n.1, Doc. No. 61.)  Mr. Emuveyan does not
respond to or dispute this contention.  Thus, it appears the allegations of wrongdoing are against
GRP and its employees.

handbook.  (*Id.* at 7, 10, 14, 15.)  Mr. Emuveyan seeks sanctions in the form of a default

judgment finding the defendants liable for discrimination, a referral of the defendants to the

Federal Contract Compliance Programs for investigation,[2] and attorneys' fees and costs.  (*Id.* at

2, 20.)

## LEGAL STANDARDS

Spoliation is the "destruction or significant alteration of evidence, or the failure to

preserve property for another's use as evidence in pending or reasonably foreseeable litigation."

*Philips Elecs. N. Am. Corp. v. BC Tech.*, 773 F. Supp. 2d 1149, 1194–95 (D. Utah 2011).

Spoliation only applies where the offending party has a duty to preserve the evidence.  *Id.* at

1195.

1. <u>Duty to Preserve</u>

The duty to preserve evidence arises when a litigant knows, or should know, "litigation

[is] imminent."  *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir.

2007).  This duty is the same regardless of whether the documents are hard copies or

electronically stored information ("ESI").  *See Russell v. Nebo Sch. Dist.*, No. 2:16-cv-00273,

2018 U.S. Dist. LEXIS 166491, at *5–6 (D. Utah Sep. 26, 2018) (unpublished) ("Rule 37(e) does

not alter existing federal law concerning when the duty to preserve attaches."); *Philips Elecs. N.*

*Am. Corp.*, 773 F. Supp. 2d at 1203 (noting the defendant had a duty "to take the necessary steps

to ensure that relevant records—including ESI—were preserved when [the] litigation was

reasonably anticipated or began").  Once a party has a duty to preserve, the duty "continues

---

[2] Where the defendants had a general duty to preserve the documents at issue, as described
below, it is unnecessary to consider requirements specific to federal contractors regarding
preservation of documents.  Moreover, Mr. Emuveyan provided no support for the idea that an
investigative referral is appropriate or necessary, or that it must come from the court.

throughout the litigation, and a party cannot continue its routine procedure of destroying relevant evidence." *Andalam v. Trizetto Grp., Inc.*, No. 12-cv-01679, 2013 U.S. Dist. LEXIS 164970, at *7 (D. Colo. Nov. 19, 2013) (unpublished).

    2.  <u>Spoliation Sanctions</u>

    Both hard copy documents and ESI are at issue in Mr. Emuveyan's motion, each of which implicate different standards for sanctions.  For hard copy documents, the court may sanction spoliation pursuant to its "inherent power to impose sanctions," *Andalam*, 2013 U.S. Dist. LEXIS 164970, at *7–8 (internal quotation marks omitted), when "the adverse party was prejudiced by the destruction of the evidence," *Burlington N. & Santa Fe Ry. Co.*, 505 F.3d at 1032.  The court has "broad discretion to fashion an appropriate sanction depending on the facts and circumstances of each case." *Pepe v. Casa Blanca Inn & Suites LLC*, No. 18-cv-476, 2020 U.S. Dist. LEXIS 161469, at *6 (D.N.M. Apr. 10, 2020) (unpublished).  Such sanctions may include an award of attorneys' fees, exclusion of a witness, suppression of evidence, an adverse inference, or dismissal. *Id.*  However, imposition of a default judgment or adverse inference as a sanction requires a finding of bad faith, not just negligence. *Jones v. Norton*, 809 F.3d 564, 580 (10th Cir. 2015).

    Rule 37(e) of the Federal Rules of Civil Procedure governs spoliation sanctions for ESI. Pursuant to Rule 37(e), if ESI "is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," the court may award sanctions.  Fed. R. Civ. P. 37(e).  Specifically, the court

> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>> (A) presume that the lost information was unfavorable to the party;

(B) instruct the jury that it may or must presume the information was unfavorable to the party; or
(C) dismiss the action or enter a default judgment.

*Id.*

## ANALYSIS

Mr. Emuveyan accuses the defendants of spoliation of both hard copy documents and ESI. There is no dispute that the defendants had a duty to preserve documents. Mr. Emuveyan contends this duty arose on December 19, 2017, when he informed GRP's human resources director he intended to pursue legal action for the alleged discrimination. (Mot. 4, Doc. No. 46.) The defendants do not dispute this. At a minimum, the defendants' obligation arose no later than January 4, 2018, when they received the EEOC charge.[3] Further, there is no dispute the documents and ESI at issue may be relevant to the litigation. The court addresses the hard copy documents and ESI in turn.

I.    <u>Hard Copy Documents</u>

There are two hard copy documents at issue—Mr. Emuveyan's second termination notice and a handwritten note from Maggie Powell, a human resources manager, dated August 4, 2017. (*Id.* at 14.)

A.    *Termination Notice*

The original version of Mr. Emuveyan's termination notice states he was terminated for having three accidents in four months, and the termination was "per contract." (Mot. 14, Doc. No. 46; Ex. 17a, Doc. No. 46-17.) The second termination form includes more detailed reasoning for Mr. Emuveyan's termination. (Mot. 14, Doc. No. 46; Ex. 17b, Doc. No. 46-17.)

---

[3] The precise date is unimportant where all spoliation is alleged to have occurred after January 4, 2018. (Mot. 7, Doc. No. 46.)

Both termination forms are dated the same day: December 8, 2017. (*Id.*) The defendants concede there are two version of the termination form. (Defs.' Mem. in Opp'n to Pl.'s Mot. Regarding Spoliation of Docs. ("Opp'n") 9, Doc. No. 61.) Mr. Ewing testified he created the second version because Mr. Flake, GRP's HR director, requested he provide a more detailed reason for the termination, "so [they] have it for future use." (Ex. 5, Doc. No. 46-5; *see also* Opp'n 9, Doc. No. 61.) The defendants produced both versions in discovery. (Opp'n 9, Doc. No. 61.)

Where both versions of this termination notice were produced in discovery, and Mr. Flake testified as to the creation of both documents, the existence of a second termination notice does not amount to spoliation of the first notice.[4] Mr. Emuveyan is free to argue the second termination notice lacks weight and credibility based on the timing and circumstances of its creation. Similarly, he is free to challenge the admissibility of either document in a motion in limine if appropriate. However, Mr. Emuveyan has not met his burden to establish the defendants engaged in spoliation of his termination notices. His motion is denied as to this document.

### B.  *Maggie Powell's Handwritten Note*

With regard to Ms. Powell's note, Mr. Emuveyan again alleges spoliation. Mr. Emuveyan alleges that although he complained of discrimination to the defendants, including Ms. Powell, they failed to investigate or take action. (Compl. 4, Doc. No. 2-1.) For their part, the defendants deny that Mr. Emuveyan ever complained of discriminatory treatment or

---

[4] Mr. Emuveyan has not established when the second form was created (he has not established, for example, that it was backdated), nor that the defendants had a duty to preserve the documents at the time of creation. (*See* Hr'g Tr. 13:22–23 (conceding Mr. Emuveyan does not know when the second form was created).)

disparagement on the basis of race or national origin, and they deny failing to investigate or take appropriate action.  (Answer 4–5, Doc. No. 9.)  Ms. Powell's note is directly material to this dispute.  Mr. Emuveyan contends that on October 4, 2017, he complained to Ms. Powell of discrimination.  (Mot. 14, Doc. No. 46.)  In discovery, the defendants produced Ms. Powell's handwritten note purporting to reflect this discussion.  (*Id.* at 14–15; Ex. 18, Doc. No. 46-18.)  Although an unredacted version of this document was not provided to the court, Mr. Emuveyan claims the note "contains no indication that Mr. Emuveyan complained to her of discrimination," and the defendants did not contest this fact.  (Mot. 15, Doc. No. 46.)  The absence of any complaint of discrimination in the note contradicts Mr. Emuveyan's claim.

The problem is that the note appears to have been drafted by Ms. Powell on the same day as her meeting with Mr. Emuveyan.  But this is not true.  The note was not created contemporaneously with the meeting, or on the day it is dated, or at any time closely afterward.  Although the note is dated August 4, 2017, (Ex. 18, Doc. No. 46-18), the defendants concede it was created after Mr. Emuveyan filed his UALD complaint, which the defendants received on January 4, 2018, (Opp'n 10, Doc. No. 61).  This later creation date only came to Mr. Emuveyan's attention because he knew his meeting with Ms. Powell occurred on October 4, 2017, not August 4.  Because the note contained an incorrect meeting date, Mr. Emuveyan was prompted to ask questions at Ms. Powell's deposition, uncovering the truth about the document's creation.  Had the meeting date on the later-created note been correct, Mr. Emuveyan might never have known the note was created after the fact, then backdated.

i.      Spoliation

After-the-fact creation of evidence falls under the umbrella of spoliation.  For instance, the Ninth Circuit upheld a finding of spoliation when, among other things, the record suggested

"certain documents and emails produced by [a party] may have been falsified." *Volcan Grp.,*

*Inc. v. Omnipoint Commc'ns, Inc.*, 552 F. App'x 644, 645 (9th Cir. 2014) (unpublished); *see also*

*Malone v. Weiss*, No. 17-1694, 2018 U.S. Dist. LEXIS 129606 (E.D. Pa. Aug. 1, 2018)

(unpublished) (finding unauthentic emails purporting to be sent emails, among other things,

constituted spoliation).  In any event, the court "has inherent equitable powers to impose"

sanctions for "abusive litigation practices during discovery." *Garcia v. Berkshire Life Ins. Co. of*

*Am.*, 569 F.3d 1174, 1179 (10th Cir. 2009) (upholding dismissal of case based on submission of

falsified evidence).

The defendants suggest Ms. Powell's later-created note simply reflects her past

recollection—that she wrote down facts as she remembered them at a later date.  (Opp'n 9–10,

Doc. No. 61.)  This argument lacks merit because the note is backdated, and was created and

backdated during the time the defendants had a duty to preserve evidence.  And according to Mr.

Emuveyan, it was produced in discovery along with the other HR file documents which,

presumably, were written and dated contemporaneously.  For the defendants' claim to be

legitimate, the note would have needed to contain the date Ms. Powell later recorded her

recollection, or the defendants would have needed to disclose the creation date upon production

of the note.  Instead, as the defendants conceded at the hearing, one would assume, from the face

of the document, that it was written on August 4, 2017, contemporaneous with the meeting it

memorialized.  The defendants' actions constitute spoliation.

ii.      Sanctions

Sanctions for spoliation are only appropriate if the opposing party is prejudiced by the

destruction or significant alteration of evidence the other party had a duty to preserve.  Mr.

Emuveyan contends default judgment is necessary, under the circumstances.  (Pl.'s Supp. Mem. Regarding Defs.' Spoliation of Docs. ("Pl.'s Supp."), Doc. No. 107.)

Here, the defendants do not contest they had a duty to preserve evidence at the time Ms. Powell created the note.  With the note, the defendants significantly altered the human resources file by creating an additional document which, on its face, appears to be contemporaneously written.  This alteration of evidence prejudices Mr. Emuveyan such that sanctions are warranted. Substantively altering evidence is prejudicial in the case at hand—and to the discovery process and judicial system as a whole.  *See Malone*, 2018 U.S. Dist. LEXIS 129606, at *25; *see also LaJeunesse v. BNSF Ry. Co.*, 333 F.R.D. 649, 652 (D.N.M. 2019) ("Discovery in civil litigation is, at its core, a fact-finding, truth-seeking process.  As such, it demands good faith, unambiguous, direct and forthright participation from litigants.").

Mr. Emuveyan suffers prejudice from this later-created document because it strengthens the defendants' claim that Mr. Emuveyan never complained of discrimination.  In addition, Mr. Emuveyan is now in the untenable position of either assuming the remaining documents are accurate or spending significant time and money separately corroborating each document. Widespread prejudice stems from altered and inaccurate documents in that they cast doubt on every other document produced in discovery.  *See Garcia*, 569 F.3d at 1180 ("The prejudiced party is forced either to attempt independent corroboration of each submission, at substantial expense of time and money, or to accept the real possibility that those discovery documents submitted by the opposing party are inaccurate.").  And Mr. Emuveyan was prejudiced by the need to spend time at the defendants' depositions uncovering the truth about the drafting of the document and by the cost associated with his spoliation motion.

The defendants contend sanctions are not appropriate because they had no obligation to include a background narrative on every document produced in discovery. They point out that both Ms. Powell and Mr. Flake testified truthfully as to the genesis of the document. (Opp'n 10, Doc. No. 61.) But the mere fact that the defendants did not separately perjure themselves in response to Mr. Emuveyan's questions does not mitigate Mr. Emuveyan's prejudice. And while the defendants are correct that they have no affirmative duty to provide a background narrative on every document they produce, they do have an affirmative duty not to create misleading evidence. They cannot create and produce a backdated document without disclosing that fact. They cannot stand silently by, allowing Mr. Emuveyan to believe the document was drafted conterminous with its date—unless he somehow independently manages to ferret out the truth.

Where Mr. Emuveyan has been prejudiced by the significant alteration of this documents, it is necessary to determine the appropriate sanction. An entry of default judgment or the imposition of adverse inferences require a showing of bad faith. *Jones*, 809 F.3d at 580. To assess whether Mr. Emuveyan's requested sanction of default judgment[5] is appropriate, the court applies the five factors enumerated in *Ehrenhaus v. Reynolds*, 965 F.2d 916 (10th Cir. 1992):

    (1) the degree of prejudice to the non-offending party,

    (2) the degree of interference with the judicial process,

    (3) the culpability of the offending party,

    (4) whether the court warned the party in advance that noncompliance would likely result in default judgment, and

---

[5] While the *Ehrenhaus* factors are commonly used to justify dismissal, they are equally relevant to determining whether default judgment is warranted. *See Baity v. Brad Hall & Assocs.*, No. CIV 18-0183, 2019 U.S. Dist. LEXIS 113541, at *3 (D.N.M. July 8, 2019) (unpublished).

(5) the efficacy of lesser sanctions

*Id.* at 921; *Celtig, LLC v. Patey*, No. 2:17-cv-01086, 2021 U.S. Dist. LEXIS 16429, at *5 (D. Utah Jan. 27, 2021) (unpublished).  These factors do not establish a rigid test, nor are they exhaustive or entitled to equal weight.  *Chavez v. City of Albuquerque*, 402 F.3d 1039, 1044 (10th Cir. 2005).  They are simply factors the court must consider.  *Id.*  Because default judgment is "a harsh sanction," *id.*, "[o]nly when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits is [default judgment] an appropriate sanction," *Ehrenhaus*, 965 F.2d at 921 (internal quotation marks omitted).

Under the first *Ehrenhaus* factor, as discussed above, there is prejudice to Mr. Emuveyan. The document creates three types of prejudice.  First, it strengthens the defendants' claim that Mr. Emuveyan never complained of discrimination.  Second, it casts doubt on the authenticity of every other dated document in the discovery production.  Third, Mr. Emuveyan spent deposition time and preparation time ferreting out the truth about the document and bringing this motion.

Turning next to the fifth *Ehrenhaus* factor, each of these instances of prejudice can be mitigated by lesser sanctions.  Lesser sanctions can effectively place the parties in a position as if the document were never created.  First, excluding the document from evidence negates any prejudice to Mr. Emuveyan caused by the document's support of the defendants' arguments. Without the document to substantiate Ms. Powell's presumed testimony that Mr. Emuveyan did not complain of discrimination, there will be no unfair evidence in favor of this testimony.  Next, doubts about the authenticity of all other documents can be alleviated by requiring the defendants to provide an affidavit affirming no other documents produced in discovery were backdated, or, if other documents were backdated, to produce a list of such documents and information about the creation of the documents.  This would prevent Mr. Emuveyan from spending time and

11

money separately confirming the authenticity of each document produced.  Finally, an award of attorneys' fees for the time spent bringing this motion can help mitigate Mr. Emuveyan's prejudice.  Because lesser sanctions mitigate the prejudice arising from this document, the first and fifth *Ehrenhaus* factors weigh against default judgment.

The second *Ehrenhaus* factor, the amount of interference with the judicial process, weighs in favor of default judgment.  "Greater degrees of obstruction help justify a dismissal sanction."  *King v. Fleming*, 899 F.3d 1140, 1151 (10th Cir. 2018).  "[T]here is no greater interference with the judicial process than false testimony and the willful failure to disclose information."  *Coyne v. Los Alamos Nat'l Sec., LLC*, No. CIV 15-0054, 2017 U.S. Dist. LEXIS 67021, at *17 (D.N.M. Mar. 21, 2017) (unpublished) (internal quotation marks omitted).  And, as discussed above, the later-created document was misleading in that it was drafted to appear as though it were created contemporaneously with the meeting.  Although Ms. Powell's and Mr. Frank's testimony about this document was accurate, information about the creation of document and the fact that it was backdated was only offered in response to Mr. Emuveyan's questioning. The defendants did not independently reveal this.  This interferes with the judicial process by casting doubt on all other documents produced by the defendants.

The third *Ehrenhaus* factor, culpability of the litigant, weighs in favor of default judgment.  Culpability exists where the litigant "acted with willfulness, bad faith, and fault" and made calculated decisions for strategic use in litigation.  *Xyngular v. Schenkel*, 890 F.3d 868, 874 (10th Cir. 2018).  "[B]ad faith, or culpability, may not mean evil intent, but may simply signify responsibility and control."  *In re New Canyonlands by Night, LLC*, 415 F. Supp. 3d 1020, 1025 (D. Utah 2019) (finding intentional and bad faith spoliation rather than negligence where party knew litigation was imminent and had a duty to preserve evidence, but repaired the vessel at

issue for business purposes).  The defendants here are culpable, not merely negligent.  They

created the document in response to Mr. Emuveyan's UALD complaint and it was backdated to

appear as though created on the purported date of the meeting.  The fact that the defendants were

honest about the nature of the document at their depositions, (Opp'n 10, Doc. No. 61), does not

change the willful and strategic nature of the defendants' conduct.  No notice was given to Mr.

Emuveyan that the document was a later recollection which had been backdated; he was left to

figure this out for himself.  If Mr. Emuveyan had not known the date of his meeting with Ms.

Powell was incorrect in the document, he would never have known to ask about the creation of

the document.  This would have had significant repercussions.  Accordingly, this factor weighs

in favor of default judgment.

The fourth *Ehrenhaus* factor—whether the court warned the defendants of the potential

for default judgment—weights against default judgment.  Although it is not a prerequisite for

default judgment that the offending party be warned, *Garcia*, 569 F.3d at 1180, it is undisputed

the defendants were not warned here.  The court now affirmatively warns the defendants that any

future violation of discovery rules, including spoliation, may result in a default judgment.

Overall, the aggravating factors do not outweigh the "the judicial system's strong

predisposition to resolve cases on their merits."  *See Ehrenhaus*, 965 F.2d at 921.  The "harsh

sanction" of default judgment is not appropriate in this case.  *See Chavez*, 402 F.3d at 1044.  As

lesser sanctions, the court excludes Ms. Powell's handwritten note from evidence, requires the

defendants to affirmatively state what, if any, other documents produced were backdated, and

awards attorneys' fees to Mr. Emuveyan.  These sanctions strike the right balance by eliminating

the unfair advantage created by a misleading document without barring the defendants from

asserting a defense—that Mr. Emuveyan did not complain of discrimination—they may

otherwise would be able to prove. *See, e.g.*, *CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 500 (S.D.N.Y. 2016) (issuing sanctions but rejecting more severe sanctions which would "unnecessarily hamper the plaintiffs in advancing what might, in fact, be legitimate claims"). Further, the award of attorneys' fees eliminates economic prejudice to Mr. Emuveyan and deters future spoliation.

## II.    Electronically Stored Information

There are three types of ESI at issue in Mr. Emuveyan's motion—the defendants' employee handbook, Mr. Emuveyan's discipline record, and other drivers' discipline records. (Mot. 7, 10, 15, Doc. No. 46.)  As noted above, ESI is subject to different standards pursuant to Rule 37(e) of the Federal Rules of Civil Procedure.  ESI spoliation occurs if a party has a duty to preserve evidence and ESI "is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery."  Fed. R. Civ. P. 37(e). "[U]pon finding prejudice to another party from loss of the information," the court "may order measures no greater than necessary to cure the prejudice."  *Id.* at 37(e)(1).

### A.  *Employee Handbook*

Mr. Emuveyan argues the defendants did not abide by their duty to preserve a copy of the employee handbook.  As of the time of the hearing, it appeared the defendants did fail to preserve the handbook as it existed at the time they knew litigation was imminent.  However, in supplemental briefing, the defendants indicated they located a version the handbook in place at the time of Mr. Emuveyan's termination.  (Defs.' Supp. Mem. Regarding Sanctions as Requested in Pl.'s Mot. Regarding Spoliation of Docs. ("Defs.' Supp.") 5, Doc. No. 106.)  Accordingly, no

spoliation has occurred, and no sanctions are warranted.  The defendants must produce this version within fourteen days of this order, if they have not already done so.

### B. *Discipline Records*

Mr. Emuveyan next contends the defendants significantly altered both his disciplinary records and those of other drivers.  (Mot. 7, 10, Doc. No. 46.)  According to the defendants, discipline is administered to employees by supervisors in the form of "buff slips" for verbal warnings and letters for written warnings.  (Opp'n 4, Doc. No. 61.)  After discipline is administered, an HR professional adds the buff slips or written warnings to a separate document summarizing each employee's discipline.  (*Id.*)  This summary document is known as the "HR Discipline Record."  It is an internal document allowing "Human Resources to quickly assess an employee's discipline history."  (*Id.*)  Mr. Emuveyan alleges this discipline summary record has been spoliated.

Regarding his own discipline record, Mr. Emuveyan claims the defendants: (1) changed an entry to state he received a warning notice when the record previously stated he had not,[6] (2) added a complaint that Mr. Emuveyan did not wash out where he was told to, (3) altered the year of an entry noting Mr. Emuveyan failed to clean concrete material off his platform, and (4) altered the narrative of one entry from blank to "Termination."  (Mot. 7–10, Doc. No. 46.)  The defendants do not dispute Mr. Emuveyan's assertion that these changes all occurred after December 19, 2017.  (*See* Mot. 7, Doc. No. 46.)  Nonetheless, the defendants argue they adequately preserved the evidence because they provided the metadata for all changes made to Mr. Emuveyan's summary record.  (Hr'g Tr. 33:11–13.)  However, the defendants

---

[6] Although it is not entirely clear, there is a suggestion the underlying buff slip was created after the litigation commenced.  (*See* Opp'n 6, Doc. No. 61.)

acknowledged this metadata does not reflect any changes made to the narrative columns.  (Hr'g Tr. 33:12–13, 38:13–22.)

Regarding other drivers, Mr. Emuveyan argues the defendants significantly altered the records of eleven other drivers by removing entries of accidents.  (Mot. 12–14, Doc. No. 46.) Mr. Emuveyan bases this allegation on the fact that several accidents did not appear in these drivers' discipline records but did appear in the defendants' insurance documents.  (*Id.*)  In response, the defendants represent that these instances did not result in discipline, suggesting these accidents were never included in the employees' discipline summaries (meaning no spoliation occurred).  (Opp'n 9, Doc. No. 61.)  At the hearing, defense counsel could not say whether after-the-fact changes were made to these documents but expressed a belief that they were produced as they existed as of 2020, not as of December 2017.  (Hr'g Tr. 51:8–22.)

Next, Mr. Emuveyan contends the defendants created an after-the-fact discipline entry for mixer truck driver SA.  (Mot. 11–12, Doc. No. 46.)  Mr. Emuveyan contends SA harassed him, and the defendants added a later entry to SA's file, indicating SA was warned for making an offensive comment.  (*Id.*)  Apparently, Mr. Ewing testified this disciplinary entry stemmed from SA's comment that Mr. Emuveyan was "running away from the plantation."  (*Id.*; *see also* Ex. 5, Doc. No. 46-5.)  Mr. Ewing acknowledged this disciplinary entry was created after Mr. Emuveyan filed his lawsuit.  (Mot.  12, Doc. No. 46; Ex. 5, Doc. No. 46-5.)

i.    Spoliation

First, with regard to the records of drivers other than Mr. Emuveyan and SA, it is not clear at this point whether there has been spoliation.  At the hearing, defense counsel indicated she was believed the other drivers' records were produced as they existed in 2020, not as they existed in 2017.  (Hr'g Tr. 51:11–15.)  Counsel indicated later changes to those documents

would be reflected in the metadata, which Mr. Emuveyan did not request. (*Id.* at 51:16–52:12.) Where defense counsel could not say whether the other drivers' records were altered before being produced in 2020, it is unclear whether the documents were adequately preserved. Accordingly, the court orders the defendants to provide all metadata for the other named drivers, showing all changes from December 19, 2017 to the present, within fourteen days. *See* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment ("Noting in the rule limits the court's powers under Rules 16 and 26 to authorize additional discovery.").

With regard to Mr. Emuveyan's discipline record and SA's discipline record, there is evidence of spoliation. Mr. Emuveyan has established the defendants failed to take reasonable steps to preserve these records, and neither record can be fully restored or replaced through additional discovery.[7] *See* Fed. R. Civ. P. 37(e). First, not only did the defendants fail to preserve the evidence as it existed at the time litigation was imminent, they affirmatively altered it. The defendants justify the alterations as changes made as part of normal business practices— to harmonize the discipline records with the underlying documents. (*See* Opp'n 5–6, Doc. No. 61.) This argument lacks merit. As soon as the duty to preserve evidence is triggered, a party must discontinue any business practice causing spoliation. *See Andalam*, 2013 U.S. Dist. LEXIS 164970, at *7; *see also* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment (explaining the "prospect of litigation may call for reasonable steps to preserve information by intervening" in a company's "routine operation" of an electronic information system). To the extent the defendants had a business practice of correcting discipline records when they

---

[7] The defendants argue any changes to the records were not significant and were supported by underlying records. (*See* Opp'n 11, Doc. No. 61; Hr'g Tr. 38:3–12.) Unlike common law spoliation, Rule 37(e) contains no requirement that the changes be significant to constitute spoliation. Regardless, the charges are significant—for the same reason the changes have prejudiced Mr. Emuveyan, as discussed below.

discovered an error or omission based on underlying documents, they were required to discontinue that practice to the extent it would spoliate documents—or to take other appropriate measures to preserve the authenticity of the record.

Second, the original versions of the discipline records cannot be restored or replaced through additional discovery. *See CAT3, LLC.*, 164 F. Supp. 3d at 500 (finding sanctions to be warranted under Rule 37(e) where emails were manipulated and lost and could not be restored or replaced). Because the defendants concede the metadata would not show all changes made, specifically, changes to the narrative columns, the discipline records cannot be restored or replaced. And contrary to the defendants' argument, reviewing the underlying records will not establish what the discipline record looked like in 2017, because at least two buff slips were created after the fact. (Opp'n 2, 6, Doc. No. 61.)

The defendants rely on *Fatpipe Networks* for the proposition that they have no obligation to produce metadata which does not exist. (Opp'n 7, Doc. No. 61.) *Fatpipe Networks* is distinguishable. Although the offending party in *Fatpipe Networks* did not historically use a "version tracking system" before the commencement of the lawsuit, as soon as it was clear the "lawsuit would continue," the party "began retaining copies of all new code versions through the creation of a file directory structure within its server." *Fatpipe Networks India Ltd. v. XRoads Networks, Inc.*, No. 2:09-cv-00186, 2015 WL 12778633, at *4 (D. Utah Sept. 22, 2015) (unpublished). Additionally, the offending party produced a log showing how the "firmware has been modified over time." *Id.* The court ultimately found the party adequately instituted a version control system after being ordered to do so. *Id.* The fact that this system differed from the moving party's preferred system was not a violation of Rule 37. The court rejected the moving party's request for additional information "that simply does not exist." *Id.*

18

Here, there is no indication that once Mr. Emuveyan filed a complaint with UALD or the EEOC, the defendants began accurately tracking changes to the discipline records. In fact, the changes were made *after* these actions commenced. This is not like *Fatpipe Networks* where a party failed to maintain testing "log files" but had screen shots and explanations of how testing was performed. *See id.* at *8. Here, as discussed below, the defendants did not simply fail to maintain the discipline records, but affirmatively altered them in a way that strengthens their defense. The bottom line is that there is no way for Mr. Emuveyan to know what his discipline record or SA's discipline record looked like as of December 2017. Accordingly, this ESI is lost and cannot be restored or replaced with additional discovery.

ii.      Sanctions

If spoliation prejudices the moving party, the court may issue a sanction no greater than necessary to cure the prejudice. In this case, Mr. Emuveyan is prejudiced by the defendants' alteration of the discipline records.

To understand this prejudice, it is important here to consider the legal framework in discrimination cases. Under the *McDonnell Douglas* burden shifting analysis, if Mr. Emuveyan estbalishes a prima facie case of discrimination, the defendants then have the burden to establish they had a "legitimate, nondiscriminatory reason" for terminating Mr. Emuveyan. *Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 920 (10th Cir. 2004). Presumably, the defendants will rely on their contention that Mr. Emuveyan was terminated for having three vehicle accidents. If the defendants meet their burden, "the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.*

This framework highlights the relevance of the discipline records and underlying documents, and the prejudice caused by the alterations.  It may be true that the defendants have underlying documentation supporting all amendments to the discipline records, but this misses the point.  The defendants were obligated to preserve relevant records—as they existed at the time litigation was imminent—including any errors or omissions.  The defendants have provided no authority for the premise that the duty to preserve permits a party to correct and perfect its records in response to a complaint.  While the defendants downplay the changes, claiming they simply corrected the summary discipline record using the underlying buff sheets, the alterations are significant.  Having underlying documents and a summary sheet which both state the same thing could greatly strengthen their defense in the eyes of the jury, helping to convince the jury Mr. Emuveyan was terminated for legitimate reasons.

For example, the defendants later added into Mr. Emuveyan's record a complaint they received about Mr. Emuveyan wearing earmuffs and being on his phone at work.  (Opp'n 6, Doc. No. 46.)  The defendants contend this alteration is irrelevant and immaterial because the incident did not form the basis for Mr. Emuveyan's termination.  (*Id.*)  But the more documented incidents in an employee's file, the more likely a jury is to believe the employee was terminated for a legitimate reason.  The existence of underlying buff sheets does not change this.  Even assuming the buff sheets were properly and contemporaneously created, Mr. Emuveyan could suggest the failure to include them in the discipline summary report suggests the underlying incidents were minor or never happened.  The defendants are free to argue otherwise, but they are not free to create their own corroborating evidence after the fact, when they have a duty to preserve.  Similarly significant are changes to whether Mr. Emuveyan was given a warning notice.  (*See* Reply in Supp. of Pl.'s Mot. Regarding Spoliation of Docs. 3, Doc. No. 65.)

The changes made to SA's record are also prejudicial.[8]  Specifically, SA's discipline record was altered to indicate SA was warned in April 2016 for making a racially offensive comment on the radio.  (Mot. 11–12, Doc. No. 46.)  But this entry was created after it was clear litigation was imminent.[9]  (*See* Ex. 5 at 202:3–204:16, Doc. No. 46-5.)  This alteration prejudices Mr. Emuveyan by backing up the claim that the defendants punished SA for his derogatory comment to Mr. Emuveyan.  It further strengthens the defendants' claim that they took appropriate action and did not retaliate against Mr. Emuveyan.

Because these alterations strengthen the defendants' defenses, they weaken Mr. Emuveyan's claims.  This is the very definition of prejudice.  Mr. Emuveyan must be permitted to present his case, and have the defendants present their defenses, based on the evidence as it existed at the time the duty to preserve arose.  It is then the jury's province to make determinations on the basis of this evidence and to resolve any evidentiary conflicts.  *See Tuvell v. Prof'l Ass'n of Dive Instructors*, No. 1:12-cv-00128, 2015 U.S. Dist. LEXIS 67250, at *9 (D. Utah May 22, 2015) (unpublished).  The defendants' conduct further prejudiced Mr. Emuveyan by requiring him to spend time litigating this motion and examining metadata to decipher what

---

[8] Mr. Emuveyan also takes issue with the fact that the drivers' discipline records were printed in July 2020.  (Mot. 10–11, Doc. No. 46.)  The date the records were printed for production, on its own, does not establish the documents were not preserved.

[9] It is apparent that the buff slip was not created on the same day Mr. Ewing allegedly disciplined SA.  (Opp'n 9, Doc. No. 61.)  But without more information, such as when the buff slip was created, there is insufficient evidence of spoliation as to the buff slip.  Accordingly, the buff slip is more appropriately dealt with as an admissibility issue in a motion in limine.

the discipline records looked like as of December 2017.  Accordingly, the defendants' actions merit sanctions.

The sanctions available under subdivision (e)(1) are extensive and subject to the court's discretion.  *See* Fed. R. Civ. P. 37(e) advisory committee's notes to 2015 amendment.  The only limitations are that they are "no greater than necessary to cure the prejudice," and are not the three sanctions listed in subsection (e)(2).[10]  Fed. R. Civ. P. 37(e)(1).  "There is no all-purpose hierarchy of the severity of various measures; the severity of given measures must be calibrated in terms of their effect on the particular case."  Fed. R. Civ. P. 37(e) advisory committee's notes to 2015 amendment.  The sanctions imposed under subsection (e)(1) may be severe, including "forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument."  *Id.*

Neither party's suggested sanction is fitting.  (*See* Pl.'s Supp., Doc. No. 107 (arguing for default judgment); Defs.' Supp., Doc. No. 106 (arguing for exclusion of Mr. Emuveyan's discipline summary and production of metadata from other drivers' records).)  Exclusion of Mr.

---

[10] Mr. Emuveyan argues the sanction should be default judgment—a sanction only available under Rule 37(e)(2), not Rule 37(e)(1).  For a sanction under Rule 37(e)(2) to apply, Mr. Emuveyan must establish the defendants acted with an intent to deprive him of the information. *See Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 66 (S.D.N.Y. 2020).  Mr. Emuveyan has not made this showing.  For this reason, the court does not address Mr. Emuveyan's request under Rule 37(e)(2).  Moreover, even if Mr. Emuveyan had established the defendants acted with the requisite intent, the "severe measures" of subsection (e)(2) should not be used when sanctions pursuant to subsection (e)(1) would suffice.  Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.  Indeed, "courts must be wary of issuing case-dispositive sanctions; such sanctions should be imposed only in extreme circumstances, usually after consideration of alternative, less drastic sanctions."  *Moody v. CSX Transp., Inc.*, 271 F. Supp. 3d 410, 431–32 (W.D.N.Y. 2017) (finding an intent to deprive but declining to issue a case-dispositive sanction).

Emuveyan's discipline record is not a sufficient sanction because it would deprive Mr.

Emuveyan of the ability to point out to the jury the inconsistencies between the unaltered

discipline record and the underlying documents.  Because exclusion of the document would not

allow Mr. Emuveyan to present to the jury the status of the records at the time litigation was

imminent, exclusion would not mitigate the prejudice caused by the alterations.[11]  Producing the

metadata from the other drivers' records also is insufficient to mitigate prejudice.  This is

because, as discussed above, it appears some of the underlying documents were created after the

fact, and the defendants have conceded the metadata does not capture all changes (such as

changes to the narrative column).

Here, the appropriate sanctions are threefold.  First, Mr. Emuveyan is awarded attorneys'

fees for the time spent bringing the motion for spoliation.  This compensates Mr. Emuveyan for

economic prejudice he incurred.  Second, all alterations and the entirety of the narrative columns

from both Mr. Emuveyan's and SA's discipline records must be redacted.  The redactions protect

Mr. Emuveyan from any unfair advantage that may otherwise be gained from the after-the-fact

corrections.  Finally, Mr. Emuveyan will be permitted to present evidence to the factfinder

regarding the alterations made to the records after litigation was imminent.  *See McQueen v.*

*Aramark Corp.*, No. 2:15-cv-492, 2016 U.S. Dist. LEXIS 164678, at *12–13 (D. Utah Nov. 29,

2016) (unpublished).  The parties can argue what inferences they want the jury to draw from that

fact.  *See id.*  If the case is tried to a jury, Mr. Emuveyan is entitled to a jury instruction allowing

---

[11] It may be that this document no longer is admissible anyway, given that changes were made and/or documents were created in anticipation of litigation.  *See Echo Acceptance Corp. v. Household Retail Servs., Inc.*, 267 F.3d 1068, 1090 (10th Cir. 2001); *United States v. Gwathney*, 465 F.3d 1133, 1141 (10th Cir. 2006).  However, the admissibility of this document is not before the court, so the court makes no finding on this issue.

the jury to consider the alteration of the evidence in evaluating witness credibility and making

other factual determinations.[12]  *See, e.g.*, *Charlestown Cap. Advisors, LLC*, 337 F.R.D. at 68–69.

This sanction ensures the factfinder will understand the context of the evidence in the case.

However, Mr. Emuveyan is not entitled to an adverse-inference instruction.  *See McQueen*, 2016

U.S. Dist. LEXIS 164678, at *12–13.

## CONCLUSION

Mr. Emuveyan's motion is DENIED insofar as it seeks default judgment and a finding of

liability but is GRANTED insofar as it seeks spoliation sanctions.  Accordingly, the court

ORDERS:[13]

1. Ms. Powell's handwritten note is excluded from the evidence and the defendants must provide Mr. Emuveyan with an affidavit within fourteen days of this order stating which other documents were backdated, if any.

2. The defendants must produce the version of the employee handbook that was in place at the time of Mr. Emuveyan's termination within fourteen days.

3. The defendants must produce all metadata from the discipline records for the other named drivers within fourteen days.

4. All alterations to Mr. Emuveyan's and SA's discipline summary records are to be redacted, along with the entirety of the narrative columns.  Only the redacted records can be used in evidence.

5. Mr. Emuveyan is permitted to present evidence to the factfinder regarding the alterations made to the records after litigation was imminent.  The parties are permitted to argue what inferences they want the factfinder to draw from that fact.  If the case is tried to a jury, Mr. Emuveyan is entitled to a jury instruction allowing the

---

[12] To avoid impinging on the trial judge's domain, the undersigned leaves it to the trial judge to determine the appropriate mechanism for permitting the presentation of the evidence and argument on this issue at trial, as well as the specific wording of the jury instruction.

[13] In order to mitigate prejudice to Mr. Emuveyan, the order as to the exclusion and redaction of evidence applies to all defendants equally.  However, the jury instruction and the presentation at trial regarding the altered evidence applies only to GRP and its employees.  Similarly, the award of attorneys' fees applies only to GRP.

jury to consider the alteration of the evidence in evaluating witness credibility and making other factual determinations.

6. Mr. Emuveyan is awarded reasonable attorneys' fees incurred as a result of bringing the motion for spoliation. Mr. Emuveyan must submit a declaration to the defendants reflecting the reasonable attorneys' fees incurred in connection with the motion. The parties are then ordered to meet and confer and submit a stipulated fee amount, if possible. If the parties cannot agree on the amount of attorneys' fees to be paid to Mr. Emuveyan, the defendants shall file a short-form discovery motion outlining the disagreement.

DATED this 16th day of August, 2021.

BY THE COURT:

_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge