UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| OGHENETEGA EMUVEYAN,<br><br>    Plaintiff,<br><br>v.<br><br>STEVE EWING; GENEVA ROCK PRODUCTS INC., a Utah corporation; and CLYDE COMPANIES, INC., a Utah corporation,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT BASED ON DEFENDANTS' SPOLIATION OF EVIDENCE (DOC. NO. 173)**<br><br>Case No. 2:19-cv-00616<br><br>Judge Howard C. Nielson, Jr.<br><br>Magistrate Judge Daphne A. Oberg |

Before the court is Plaintiff Oghenetega Emuveyan's Motion for Default Judgment Based on Defendants' Spoliation of Evidence ("Mot.," Doc. No. 173). The court heard argument on the motion on January 4, 2022. (*See* Doc. No. 223.) After considering the briefing and arguments made at the hearing, the motion is granted in part and denied in part for the reasons stated below.

BACKGROUND

Mr. Emuveyan brought this action against Steve Ewing, Geneva Rock Products Inc. ("GRP"), and Clyde Companies, Inc., alleging, in part, they discriminated against him and treated him disparately based on his race and national origin, created a hostile work environment, wrongfully terminated him, and retaliated against him. (Compl., Doc. No. 2-1.) Mr. Emuveyan was a mixer truck driver at GRP from February 2014 until his termination on December 8, 2017. (Mem. Dec. and Order Granting in Part and Den. in Part Pl.'s Mot. Regarding Spoliation of Docs. ("Spoliation Order") 1, Doc. No. 152.) Mr. Emuveyan, who is black, alleges the defendants subjected him to different performance standards than his white coworkers and

1

retaliated against him when he complained of discrimination. (*Id.*) Further, he argues the defendants fired him for minor incidents while his white coworkers were not disciplined for more serious accidents. (*Id.* at 1–2.) Mr. Emuveyan characterizes the defendants' claim that he was terminated for three accidents as a false pretense. (*Id.* at 2.) The defendants deny any discrimination and claim every employment action was taken "for legitimate non-discriminatory and non-retaliatory business reasons." (Answer 7–8, Doc. No. 9.) Further, they allege they took "prompt, effective remedial action that was reasonably calculated to end all discrimination against Plaintiff, if any, of which they were aware or should have been aware." (*Id.* at 8.)

In his current motion, Mr. Emuveyan seeks a default judgment, among other sanctions, against all named defendants for spoliation of evidence. (Mot. 1, Doc. No. 173.) Mr. Emuveyan claims the defendants not only failed to preserve documents but improperly fabricated and manipulated documents after learning of Mr. Emuveyan's claim, including during the discovery process. (*Id.* at 1–2.) According to Mr. Emuveyan, he has become aware of more examples of spoliation, in addition to those addressed in the court's prior spoliation order. (*Id.* at 2.) In his reply, and at the hearing, Mr. Emuveyan also asked the court to reconsider its prior order. (*See* Reply in Support of Pl.'s Mot. for Default J. ("Reply") 6, Doc. No. 211.) Because it is improper to bring a motion in a reply, *see* DUCivR 7-1(a)(3), the court permitted Mr. Emuveyan to file a separate motion on this issue.[1]

## LEGAL STANDARDS

"Spoliation is the destruction or significant alteration of evidence . . . or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."

---

[1] Mr. Emuveyan's motion to reconsider will be addressed in a separate order. (*See* Pl.'s Request for Reconsideration re: Sanctions Against Defs. (ECF 152), Doc. No. 228.)

*Xyngular Corp. v. Schenkel*, 200 F. Supp. 3d 1273, 1309 (D. Utah 2016) (internal quotation marks omitted); *see also Mglej v. Gardner*, No. 2:13-cv-00713, 2021 U.S. Dist. LEXIS 163209, at *4 (D. Utah Aug. 27, 2021) (unpublished). Spoliation is only at issue where the offending party has a duty to preserve the evidence. *See Xyngular Corp.*, 200 F. Supp. 3d at 1309.

1. Duty to Preserve

The duty to preserve evidence arises when a litigant knows, or should know litigation is imminent. *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007). This duty is the same regardless of whether the evidence consists of hard copy documents or electronically stored information ("ESI"). *See Russell v. Nebo Sch. Dist.*, No. 2:16-cv-00273, 2018 U.S. Dist. LEXIS 166491, at *5–6 (D. Utah Sept. 26, 2018) (unpublished) ("Rule 37(e) does not alter existing federal law concerning when the duty to preserve attaches."). Once a party has a duty to preserve, the duty "continues throughout the litigation, and a party cannot continue its routine procedure of destroying relevant evidence." *Andalam v. Trizetto Grp., Inc.*, No. 12-cv-01679, 2013 U.S. Dist. LEXIS 164970, at *7 (D. Colo. Nov. 19, 2013) (unpublished).

2. Spoliation Sanctions

Both hard copy documents and ESI are at issue in Mr. Emuveyan's current motion, and each implicates a different standard for sanctions. For hard copy documents, the court may sanction spoliation pursuant to its "inherent power to impose sanctions," *Andalam*, 2013 U.S. Dist. LEXIS 164970, at *7–8 (internal quotation marks omitted), when "the adverse party was prejudiced by the destruction of the evidence," *Burlington N. & Santa Fe Ry. Co.*, 505 F.3d at 1032. The court has "broad discretion to fashion an appropriate sanction depending on the facts and circumstances of each case." *Pepe v. Casa Blanca Inn & Suites LLC*, No. 18-cv-476, 2020 U.S. Dist. LEXIS 161469, at *6 (D.N.M. Apr. 10, 2020) (unpublished). Such sanctions may

3

include an award of attorneys' fees, exclusion of a witness, suppression of evidence, an adverse inference, or dismissal. *Id.* However, imposition of a default judgment or adverse inference as a sanction requires a finding of bad faith, not just negligence. *Jones v. Norton*, 809 F.3d 564, 580 (10th Cir. 2015).

Rule 37(e) of the Federal Rules of Civil Procedure governs spoliation sanctions for ESI. Pursuant to Rule 37(e), if ESI "is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," the court may award sanctions. Fed. R. Civ. P. 37(e). Specifically, the court:

> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> > (A) presume that the lost information was unfavorable to the party;
> > (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> > (C) dismiss the action or enter a default judgment.

*Id.*

## ANALYSIS

Mr. Emuveyan accuses the defendants of spoliation of both hard copy documents and ESI. (*See* Mot., Doc. No. 173.) Mr. Emuveyan already met his burden to show (and the court already found) the defendants had a duty to preserve at least as of January 4, 2018, when they received the Equal Employment Opportunity Commission ("EEOC") charge.[2] (Spoliation Order 5, Doc. No. 152.) Further, there is no dispute the documents and ESI at issue are relevant to the

---

[2] It is undisputed that on December 19, 2017, Mr. Emuveyan notified Bryan Flake, GRP's human resources director, of his intent to bring a claim of race discrimination. (*See* Spoliation Order 2, Doc. No. 152.) Then, Mr. Emuveyan filed a charge with the EEOC and the Utah Antidiscrimination and Labor Division. (*Id.*) The defendants do not dispute that they received this charge on January 4, 2018. (*Id.*)

4

litigation. Because hard copy documents and ESI are subject to different standards, the court addresses them in turn.

1. Hard Copy Documents

There are four hard copy documents at issue: (1) Mr. Emuveyan's discipline slip ("buff slip") regarding Jon Overman's complaint, (2) Mr. Emuveyan's buff slip regarding Matt Nelson's complaint, (3) Mr. Emuveyan's buff slip regarding the "third accident," and (4) SA's[3] buff slip pertaining to his comment about Mr. Emuveyan "running away from the planation." (Mot. 3, Doc. No. 173.) Mr. Emuveyan alleges the defendants backdated all four buff slips. (*Id.*)

According to the defendants, discipline is administered to employees by supervisors in the form of buff slips for verbal warnings and letters for written warnings. (Spoliation Order 15, Doc. No. 152.) After discipline is administered, a human resources ("HR") professional adds the buff slips or written warnings to a separate document summarizing each employee's discipline. (*Id.*) This summary document is known as the "HR Discipline Record." It is an internal document allowing "Human Resources to quickly assess an employee's discipline history." (*Id.*) To be clear, there is nothing inherently wrong, in terms of spoliation, with creating a buff slip after the date of the incident. As noted by GRP, it may not be possible for the individual charged with creating buff slips to create them on the day of the incident. What is impermissible, however, is to create a buff slip and backdate it such that it appears to have been created on the same day as the incident.

---

[3] The parties refer to other drivers by their initials.

### A. Mr. Emuveyan's Buff Slip Regarding Jon Overman's Complaint

Mr. Emuveyan alleges his buff slip discussing a complaint from Jon Overman is spoliated because it was backdated. (Mot. 3, Doc. No. 173.) The defendants concede the buff slip was backdated. (Defs.' Opp'n to Pl.'s Mot for Default J. Based on Defs.' Spoliation of Evidence (ECF 173) ("Opp'n") 6–7, Doc. No. 205.) Mr. Ewing acknowledged that although he did not create the buff slip on August 17, 2017 (the day he believes he spoke to Mr. Overman about the complaint), he backdated the buff slip to August 17, 2017. (*Id.*; *see also* Decl. of Steve Ewing ¶ 17, Doc. No. 61-1.) While there is no doubt it would constitute spoliation if this buff slip had been created after the defendants' duty to preserve attached, Mr. Emuveyan did not establish it was created after January 4, 2018. Accordingly, he has not established spoliation.

### B. Mr. Emuveyan's Buff Slip Regarding Matt Nelson's Complaint

Mr. Emuveyan also alleges his buff slip regarding a complaint from Matt Nelson is spoliated. (Mot. 3, Doc. No. 173.) According to Mr. Ewing, after Mr. Emuveyan had already been terminated, Mr. Nelson complained that Mr. Emuveyan failed to follow instructions on a job site on November 28, 2017. (Ewing Decl. ¶ 19, Doc. No. 61-1; Opp'n 7, Doc. No. 205.) Because Mr. Nelson first complained after Mr. Emuveyan's termination, Mr. Ewing necessarily wrote the buff slip after the termination. (Ewing Decl. ¶ 19, Doc. No. 61-1; Opp'n 7, Doc. No. 2; *see also* Mot. 3, Doc. No. 173.) Mr. Emuveyan fails to establish this constitutes spoliation. Mr. Emuveyan claims Mr. Ewing admitted to backdating all four documents in his declaration. (Mot. 3, Doc. No. 173.) But as to Mr. Nelson's complaint, Mr. Ewing explained he created the

buff slip after Mr. Emuveyan's termination because he received Mr. Nelson's complaint after the termination.  (Ewing Decl. ¶ 19, Doc. No. 61-1.)

Mr. Emuveyan has not established this buff slip was created during the time the defendants had a duty to preserve records or that it was backdated.  The buff slip was not submitted as an exhibit, and it is unclear what date it contains.  Supplementing an employment record with a new, properly dated, buff slip while there is no duty to preserve does not constitute spoliation.  It is qualitatively different than creating a document and backdating to make it appear contemporaneously written.  Mr. Emuveyan has not established spoliation with regard to this buff slip.

### C.  Mr. Emuveyan's Buff Slip Regarding His Third Accident

Mr. Emuveyan alleges Mr. Ewing likewise spoliated his buff slip regarding his third, alleged accident.  (Mot. 3, Doc. No. 173.)  However, there is no evidence of spoliation.  Mr. Ewing claims the accident at issue occurred on November 18, 2017.  (Ewing Decl. ¶ 20, Doc. No. 61-1.)  Mr. Ewing wrote the corresponding buff slip on December 6, 2017, but accidentally dated it December 6, 2018, instead of 2017.  (*Id.*)  Writing a buff slip several weeks after an incident, before the duty to preserve attached—and properly dating it—is not spoliation.  Neither is recording a mistaken date.  Making a clerical error is not the same as purposefully backdating a document.  At trial, Mr. Emuveyan is free to argue issues of admissibility or the weight of evidence, and Mr. Ewing is free to explain the mistaken date.  But this buff slip does not constitute spoliation.

### D.  SA's Buff Slip Regarding Radio Comment

In his motion, Mr. Emuveyan primarily focuses on this final buff slip: the buff slip of another driver, SA, regarding a comment he made over the radio about Mr. Emuveyan "running

7

away from the plantation." (Mot. 3, Doc. No. 173.) Mr. Ewing explained that while SA was disciplined for the comment, Mr. Ewing forgot to write a corresponding buff slip. (Ewing Decl. ¶ 22, Doc. No. 61-1.) Later, when he realized his mistake, Mr. Ewing drafted a buff slip. (*Id.*) The problem is that Mr. Ewing created the buff slip after Mr. Emuveyan filed his lawsuit.[4] (Mot 3, Doc. No. 173 (citing Ewing Depo. 202:3-11, Doc. No. 46-5).) And he backdated the buff slip to appear as though it were created at the time of the incident. (Ex. 1 to Mot., Doc. No. 173-1.) In other words, the buff slip was created and backdated during the time the defendants had an unquestionable duty to preserve evidence. And the buff slip itself does not contain any information which would make its creation date or backdated status clear. From the face of the document, one can only assume it was created contemporaneously with the incident it describes.[5]

                i.       Spoliation

Creation or alteration of evidence after the duty to preserve attaches falls under the umbrella of spoliation. For instance, the Ninth Circuit upheld a finding of spoliation when, among other things, the record suggested "certain documents and emails produced by [a party] may have been falsified." *Volcan Grp., Inc. v. Omnipoint Commc'ns, Inc.*, 552 F. App'x 644,

---

[4] At the hearing, the defendants suggested Mr. Ewing may have misspoken or misunderstood when testifying he created SA's buff slip after Mr. Emuveyan had filed suit. But his testimony on this point is clear. (*See* Ewing Depo. 202:3-11, Doc. No. 46-5.) And, like every other deponent, he had the opportunity to make changes to his testimony to the extent it was incorrect. *See* Fed. R. Civ. P. 30(e).

[5] Mr. Emuveyan alleges in his reply that Mr. Ewing also added the initials "MP" to the buff slip, in an effort to show it was initialed by Maggie Powell, the human resources director. (Reply 3, Doc. No. 211.) Because Ms. Powell had retired by the time the buff slip was created, Mr. Emuveyan suggests the initials were forged. (*Id.*) As noted by the defendants, Mr. Emuveyan first raised this argument in his reply, preventing them from responding. Accordingly, the court will not consider it. *See Deseret Trust Co. v. Unique Inv. Corp.*, No. 2:17-cv-000569, 2018 U.S. Dist. LEXIS 239267, at *9 (D. Utah. July 3, 2018) (unpublished) ("[T]his court ordinarily does not consider arguments raised for the first time in a reply brief.").

645 (9th Cir. 2014) (unpublished); *see also Malone v. Weiss*, No. 17-1694, 2018 U.S. Dist. LEXIS 129606 (E.D. Pa. Aug. 1, 2018) (unpublished) (finding unauthentic emails purporting to be sent emails constituted spoliation). And the court "has inherent equitable powers" to impose sanctions for "abusive litigation practices during discovery." *Garcia v. Berkshire Life Ins. Co. of Am.*, 569 F.3d 1174, 1179 (10th Cir. 2009).

SA's buff slip constitutes spoliation, and the buff slip is directly material to the case. Mr. Emuveyan alleges the defendants failed to investigate or act upon his complaints of discrimination. (Compl. ¶ 17, Doc. No. 2-1.) The defendants deny this allegation, (Answer ¶ 17, Doc. No. 9), and assert they took proper remedial action to end all discrimination of Mr. Emuveyan of which they were aware or should have been aware, (*id.* at 8). Because SA's later-created buff slip strengthens the defense that the defendants took appropriate remedial action, it weakens Mr. Emuveyan's claim, causing prejudice.

The defendants' arguments to the contrary lack merit. The defendants contend Mr. Ewing simply forgot to create the buff slip, and argue it is undisputed SA was sent home without pay the day of this incident. (Opp'n 5, Doc. No. 205.) The defendants could have made those arguments to a jury to explain the absence of a buff slip but, instead, Mr. Ewing created a backdated document after the duty to preserve had attached. There is no question this constitutes spoliation. Even if the record otherwise confirms the facts underlying the buff slip, by creating corroborating evidence after the fact, the defendants have attempted to tip the scale in their favor. This is improper. It violates the rules of discovery, is profoundly unfair to Mr. Emuveyan, and interferes with the judicial process.

        ii.        Sanctions

Sanctions for spoliation are only appropriate if the opposing party is prejudiced by the destruction or significant alteration of evidence the other party had a duty to preserve. *Burlington N. & Santa Fe Ry. Co.*, 505 F.3d at 1032. Mr. Emuveyan seeks default judgment, among other sanctions. (Mot. 1–2, Doc. No. 173.) The defendants make a general argument that sanctions are inappropriate. (Opp'n 3, Doc. No. 205.) Under the circumstances, sanctions are both proper and necessary.

Courts may only enter default judgment or impose adverse inferences as a sanction upon a showing of bad faith. *Jones*, 809 F.3d at 580. In this analysis, the court applies the five factors enumerated in *Ehrenhaus v. Reynolds*, 965 F.2d 916 (10th Cir. 1992):[6]

    (1) the degree of prejudice to the non-offending party,

    (2) the degree of interference with the judicial process,

    (3) the culpability of the offending party,

    (4) whether the court warned the party in advance that noncompliance would likely result in default judgment, and

    (5) the efficacy of lesser sanctions

*Id.* at 921; *Celtig, LLC v. Patey*, No. 2:17-cv-01086, 2021 U.S. Dist. LEXIS 16429, at *5 (D. Utah Jan. 27, 2021) (unpublished). These factors do not establish a rigid test, nor are they exhaustive or entitled to equal weight. *Chavez v. City of Albuquerque*, 402 F.3d 1039, 1044 (10th Cir. 2005). Rather, they are simply factors the court should consider. *Id.* Because default

---

[6] While the *Ehrenhaus* factors are commonly used to justify dismissal, they are equally relevant to determining whether default judgment is warranted. *See Baity v. Brad Hall & Assocs.*, No. CIV 18-0183, 2019 U.S. Dist. LEXIS 113541, at *3 (D.N.M. July 8, 2019) (unpublished).

judgment is "a harsh sanction," *id.*, "[o]nly when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits is [default judgment] an appropriate sanction," *Ehrenhaus*, 965 F.2d at 921 (internal quotation marks omitted).

There is no question Mr. Emuveyan suffered prejudice from this spoliation, satisfying the first *Ehrenhaus* factor. SA's buff slip creates at least three types of prejudice. First, it strengthens the defendants' claim that they took appropriate action. As noted above, the defendants significantly altered SA's human resource file by creating an additional document which, on its face, appears to be contemporaneously written. This directly strengthens the defendants' claim that they took prompt and effective action to remedy any harassment, thus, weaking Mr. Emuveyan's allegations to the contrary. Second, this substantive alteration of evidence is prejudicial to Mr. Emuveyan in that it casts doubt on the reliability of the discovery process by calling into question the authenticity of every other dated document in the discovery production. *See Malone*, 2018 U.S. Dist. LEXIS 129606, at *25; *see also LaJeunesse v. BNSF Ry. Co.*, 333 F.R.D. 649, 652 (D.N.M. 2019) ("Discovery in civil litigation is, at its core, a fact-finding, truth-seeking process."). And third, Mr. Emuveyan was prejudiced by the need to spend time and money discovering the spoliation and bringing this motion.

As noted above, the defendants argue there is no real harm where SA's punishment can be independently verified by other means. Whether or not this claim is true, it does not change the fact that Mr. Ewing created corroborating evidence after the fact, then backdated it, strengthening a defense to Mr. Emuveyan's claims. And the later creation of this document was not independently disclosed to Mr. Emuveyan, nor is it discernable from the face of the document itself. The first *Ehrenhaus* factor weighs in favor of default judgment.

11

Turning next to the fifth *Ehrenhaus* factor, each of these instances of prejudice can be mitigated by lesser sanctions. For instance, an adverse jury instruction would counter the defendants' attempt to tip the scales in their favor, undoing any unfair advantage they gained from the spoliation. Doubts about the authenticity of other documents have already been alleviated, to the extent possible, by the court's prior order requiring the defendants to provide either an affidavit affirming no other documents produced in discovery were backdated, or a list of backdated documents and information about their creation.[7] (*See* Spoliation Order 24, Doc. No. 152; Cannon Decl., Doc. No. 173-2.) Finally, an award of attorneys' fees for the time spent bringing this motion would help mitigate Mr. Emuveyan's prejudice. Because lesser sanctions can mitigate the prejudice arising from this spoliation, the fifth *Ehrenhaus* factor weighs against default judgment.

The second *Ehrenhaus* factor, the amount of interference with the judicial process, weighs in favor of default judgment. "Greater degrees of obstruction help justify a dismissal sanction." *King v. Fleming*, 899 F.3d 1140, 1151 (10th Cir. 2018). "[T]here is no greater interference with the judicial process than false testimony and the willful failure to disclose information." *Coyne v. Los Alamos Nat'l Sec., LLC*, No. CIV 15-0054, 2017 U.S. Dist. LEXIS 67021, at *17 (D.N.M. Mar. 21, 2017) (unpublished) (internal quotation marks omitted). As discussed above, the later-created document was false and misleading in that it was drafted to appear as though it were created contemporaneously with SA's alleged discipline. And the fact

---

[7] The declaration of Thomas Cannon, the current Human Resources Director at GRP, notes the company is unaware of any other backdated documents and affirms that GRP will update Mr. Emuveyan if it becomes aware of additional documents. (Thomas Cannon Decl. ¶¶ 8, 14, Doc. No. 173-2.)

that it was backdated was not originally disclosed to Mr. Emuveyan. There is no doubt this interferes with the integrity of the judicial process.

The third *Ehrenhaus* factor, culpability of the litigant, weighs in favor of default judgment. Culpability exists where the litigant "acted with willfulness, bad faith, and fault" and made calculated decisions for strategic use in litigation. *Xyngular v. Schenkel*, 890 F.3d 868, 874 (10th Cir. 2018). "[B]ad faith, or culpability, may not mean evil intent, but may simply signify responsibility and control." *In re New Canyonlands by Night, LLC*, 415 F. Supp. 3d 1020, 1025 (D. Utah 2019). The defendants' degree of responsibility and control here shows bad faith and culpability, not merely negligence. Mr. Ewing intentionally created the document after Mr. Emuveyan initiated this action (more than three years after the incident referenced in the buff slip), and backdated it, making it appear as though it were created on the purported date of SA's discipline. Originally, no notice was given to Mr. Emuveyan that the document had been backdated. Had this issue not come to light, Mr. Emuveyan never would have known about the after-the-fact creation of the document. This would have had significant repercussions. Accordingly, this factor weighs in favor of default judgment.

The fourth *Ehrenhaus* factor—whether the court warned the defendants of the potential for default judgment—weighs against default judgment. Although it is not a prerequisite for default judgment that the offending party be warned, *Garcia*, 569 F.3d at 1180, and the court has already warned the defendants once in its prior order, this instance of spoliation did not occur after the court's warning. It occurred previously, but was only recently discovered.

Overall, the aggravating factors in this case do not outweigh the "the judicial system's strong predisposition to resolve cases on their merits." *See Ehrenhaus*, 965 F.2d at 921 (internal quotation marks omitted). The "harsh sanction" of default judgment is inappropriate. *See*

*Chavez*, 402 F.3d at 1044.  And Mr. Emuveyan has not established he is entitled to his attorneys' fees for the entire case or a finding that the defendants acted with malice or reckless indifference towards Mr. Emuveyan's rights.

However, Mr. Emuveyan is entitled to an adverse inference.  Not only was SA's buff slip created after this litigation began, SA's electronic discipline record was modified to add the fact of the buff slip after discovery in this case was underway (as outlined in section 2(B) below).  This combination of events raises serious concerns about the integrity of the evidence and it is extremely prejudicial to Mr. Emuveyan.  And there is no doubt the defendants had "responsibility and control" over this evidence and its alteration.  *See In re New Canyonlands by Night, LLC*, 415 F. Supp. 3d at 1025.  Despite Mr. Ewing's testimony that he did not intend to harm Mr. Emuveyan and did not know backdating documents was wrong, (Ewing Decl. ¶ 6, Doc. No. 205-1), the facts establish culpability.  This is not a circumstance of neglect or oversight.  Mr. Ewing created the buff slip after Mr. Emuveyan filed this lawsuit: *three years* after the incident.  Whether or not Mr. Ewing meant to harm Mr. Emuveyan, the creation of the buff slip at that stage served to corroborate the defendants' evidence and anticipated testimony.  By doing so, the defendants deprived Mr. Emuveyan of the chance to present his case, and have the defendants present their defenses, based on the evidence as it existed at the time the duty to preserve arose.  *See Tuvell v. Prof'l Ass'n of Dive Instructors*, No. 1:12-cv-00128, 2015 U.S. Dist. LEXIS 67250, at *9 (D. Utah May 22, 2015) (unpublished) (noting it is for the jury to weigh evidence, make credibility determinations, and draw inferences from the facts).

If the case is tried to a jury, Mr. Emuveyan is entitled to an instruction advising the jury it must presume the fact that the buff slip was created after the litigation began and backdated is unfavorable to the defendants.  In addition, Mr. Emuveyan is awarded the reasonable attorneys'

fees incurred in connection with his motion for spoliation. These sanctions strike the right balance by eliminating the unfair advantage created by a misleading document and requiring the jury to presume such alterations are unfavorable. And the award of attorneys' fees eliminates economic prejudice to Mr. Emuveyan and deters future spoliation.

2. Electronically Stored Information

Mr. Emuveyan claims three categories of ESI were spoliated: Mr. Emuveyan's own HR discipline record and that of two drivers, SA and MB. (Mot. 6, 9–10, Doc. No. 173.)

A. Mr. Emuveyan's HR Discipline Record

At the time of Mr. Emuveyan's first spoliation motion, it was unclear whether other drivers' HR records had been spoliated. (Spoliation Order 16–17, Doc. No. 152.) Per the court's prior spoliation order, the defendants provided metadata for other named drivers so Mr. Emuveyan could see the changes made from December 19, 2017 to the time of the order. (Mot. 5, Doc. No. 173.) During this process, the defendants became aware they had improperly redacted the metadata for Mr. Emuveyan's HR record before producing it. (Opp'n 4 n.4, Doc. No. 205.) Mr. Emuveyan claims the most recent version of his HR record (the record with fewer redactions) reveals five additional instances of spoliation. (Mot. 6, Doc. No. 173.) However, it is clear most, if not all, these instances were previously addressed by the court. (*Compare* Mot. 7-8, Doc. No. 173, *with* Spoliation Order 15, Doc. No. 152.) Because Mr. Emuveyan does not explain which (if any) instances were not previously addressed, his five claims of spoliation in his record are not considered here.

B. SA's HR Discipline Record

Although SA's HR record was discussed in the court's previous order, it is necessary to address again because Mr. Emuveyan claims newly produced metadata shows previously

15

unknown spoliation. The court already made a spoliation finding based on the alteration of SA's record.[8] (*See* Spoliation Order 16–17, Doc. No. 152.) In that instance, the defendants added a later entry to SA's record, noting SA was warned for making an offensive comment to Mr. Emuveyan. (*Id*. at 16.) Mr. Emuveyan now asserts this entry was added only after he served the defendants with a discovery request in this litigation, specifically asking for all documents related to disciplinary action taken against SA. (Mot. 9, Doc. No. 173.) The defendants do not dispute the timing of these occurrences.

There is no question the defendants added an entry to SA's HR discipline record after Mr. Emuveyan sent a request for those very documents. (Mot. 9–10, Doc. No. 173; Opp'n 5, Doc. No. 205.) And there is no question this entry was added by Jessica Scarsella, the Labor Relationship Manager at GRP.[9] (Mot. 10, Doc. No. 173; Opp'n 5, Doc. No. 205.) Ms. Scarsella explained her conduct as an attempt "to make the electronic file match what was showing on the buff slip (written discipline record) for the incident." (*See* Scarsella Decl. ¶ 9, Doc. No. 205-3.) She maintained she had no ill will toward Mr. Emuveyan, and she did not intend to weaken his

---

[8] The defendants claim there is no spoliation because their expert restored the records. (Opp'n 17, Doc. No. 205.) However, the defendants failed to establish the documents were restored, as opposed to recreated—or to provide any legal basis for considering them to be equivalent. Mr. Emuveyan is certainly not obligated to accept the defense expert's word as to the accuracy of the documents' recreation. To confirm their validity, Mr. Emuveyan would need to hire his own expert, which would cause him further prejudice. Where the defendants have not established the documents were restored, the court does consider this assertion.

[9] In her declaration, Jessica Scarsella acknowledges she was a licensed attorney who worked for GRP at the time of the spoliation. (Scarsella Decl. ¶¶ 2–3, Doc. No. 205-3.) Ms. Scarsella states she worked for GRP as a labor relationship manager and also occasionally worked for W.W. Clyde & Co. (*Id.* ¶ 2.) She represents that she never worked for Clyde Companies, Inc. (*Id.*) Mr. Emuveyan alleges her user name, which included "ClydeInc," establishes she was an employee of Clyde Company, not GRP. (Mot 10, 13, Doc. No. 173.) But a user name alone is insufficient for the court to find Clyde Company, specifically, spoliated documents.

case.[10] (*Id.*) Regardless of her intent, Ms. Scarsella's conduct clearly and directly had that effect. Underlying documents and a summary sheet which both state the same thing would, no doubt, help convince the jury the defendants took proper remedial action. And this was not an act of mere negligence or accidental deletion. It was an affirmative change to a document strengthening the defendants' case, made soon after Mr. Emuveyan requested that exact document but before it was produced. Ms. Scarsella's action deprived Mr. Emuveyan of the chance to present his case, and have the defendants present their defenses, based on the evidence as it existed at the time the duty to preserve arose. *See Tuvell*, 2015 U.S. Dist. LEXIS 67250, at *9 (noting it is for the jury to weigh evidence, make credibility determinations, and draw inferences from the facts).

Although there has already been a finding of spoliation as to this change to SA's record, (*see* Spoliation Order 17, Doc. No. 152), the new information regarding the timing of the entry (and the blatant disregard for discovery process this shows) establishes the need for additional sanctions. It is necessary to consider this incident of spoliation against the timeline and backdrop of the spoliation of SA's records as a whole.

---

[10] As before, the defendants justify the changes as a document update in the normal course of business. (Opp'n 11, Doc. No. 205.) This justification is problematic and concerning. To be clear: as soon as the duty to preserve evidence is triggered, a party must discontinue any business practice causing spoliation. *See Andalam*, 2013 U.S. Dist. LEXIS 164970, at *7; *see also* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment (explaining the "prospect of litigation may call for reasonable steps to preserve information by intervening" in a company's "routine operation" of an electronic information system). To the extent the defendants had a business practice of correcting discipline records when they discovered an error or omission, they were required to discontinue that practice to the extent it would spoliate documents—or to take other appropriate measures to preserve the authenticity of the record. The defendants were obligated to preserve relevant records—as they existed at the time litigation was imminent—including any errors or omissions.

- First, as of January 4, 2018 (when the defendants received notice of the EEOC charge), the defendants failed to preserve the relevant HR files and other records. (*See generally* Spoliation Order, Doc. No. 152.)

- Next, in June 2019, Mr. Emuveyan filed suit. (Compl., Doc. No. 2-1.)

- At some point after the suit was filed, Mr. Ewing created a buff slip indicating SA had been disciplined for his derogatory comment to Mr. Emuveyan (which has the effect of strengthening the defendants' position). (*See* Opp'n 5, Doc. No. 205 (citing Ewing Depo. 68:14–71:12, Doc. No. 205-6); Ewing Depo. 202:3–11, Doc. No. 46-5.) Mr. Ewing backdated this buff slip, making it appear as though it were created contemporaneously with the alleged discipline, even though it was created more than three years afterward. (Opp'n 5, Doc. No. 205 (citing Ewing Decl. ¶ 22, Doc. No. 61-1); *see also* Ewing Depo. 202:3–11, Doc. No. 46-5.)

- When this buff slip was produced to Mr. Ewing, the defendants did not disclose the fact that it was later-created and backdated.

- On January 31, 2020, Mr. Emuveyan served the defendants with a discovery request asking for documentation of all disciplinary action taken against SA. (Ex. 4 to Mot., Pl.'s First Set of Disc., Doc. No. 173-4, at 8.)

- Two weeks after this, while the discovery request was pending, Ms. Scarsella entered the information from SA's late-created and backdated buff slip into SA's HR record. (Mot. 9, Doc. No. 173; Opp'n 5, Doc. No. 205.) (This had the effect of further strengthening the defendants' case by making SA's HR record consistent with backdated buff slip.)

18

- SA's disciplinary file was produced to Mr. Emuveyan with a redaction to the metadata line which would have revealed Ms. Scarsella's February 2020 entry of the buff slip. (*See* Mot. 5, 9, Doc. No. 173.)

It is difficult to think of a more blatantly problematic series of events combining to deprive a party of important, relevant records. Regardless of any one individual's subjective motives, this pattern is more than sufficient to show the defendants' intent to deprive Mr. Emuveyan of SA's HR record as it existed as of January 2018. *See* Fed. R. Civ. P. 37(e)(2)(B).

Mr. Emuveyan has met his burden to establish the defendants acted with the intent to deprive him information such that an adverse inference is warranted and necessary. No lesser sanction is sufficient to remedy the extent and severity of the spoliation. If the case is tried to a jury, Mr. Emuveyan is entitled to an instruction advising the jury it must presume the absence of the discipline entry as of January 2018 was unfavorable to the defendants.

### C. MB's HR Discipline Record

Lastly, Mr. Emuveyan alleges Ms. Scarsella changed almost every entry in MB's HR record from yes to no, or vice versa. (Mot. 10, Doc. No. 173.) The defendants argue Ms. Scarsella made the changes accidentally because she was unfamiliar with how the HR program worked. (Opp'n 15, Doc. No. 205.) For this reason, the changes were almost immediately reversed. These changes fundamentally differ from the alteration to SA's HR record. Even if this were to constitute spoliation, Mr. Emuveyan has not established how he was prejudiced, such that sanctions are warranted. To the extent he suffered prejudice in terms of time and expense, the award of fees to Mr. Emuveyan adequately remedies that prejudice.

CONCLUSION

As described above, Mr. Emuveyan's motion, (Doc. No. 173), is DENIED insofar as it seeks default judgment or a finding of liability but is GRANTED insofar as it seeks spoliation sanctions. Accordingly, the court ORDERS:[11]

1. If the case is tried to a jury, Mr. Emuveyan is entitled to an instruction advising the jury it must presume the fact that SA's buff slip was created after the litigation began is unfavorable to the defendants.

2. If the case is tried to a jury, Mr. Emuveyan is entitled to an instruction advising the jury it must presume the absence of the discipline entry in SA's HR record was unfavorable to the defendants.

3. Mr. Emuveyan is awarded reasonable attorneys' fees incurred in connection with his motion for spoliation. Mr. Emuveyan must submit a declaration to the defendants reflecting the reasonable attorneys' fees incurred in connection with the motion. The parties are then ordered to meet and confer meaningfully and in good faith, and to submit a stipulated fee amount, if possible. If the parties cannot agree on the attorneys' fees to be paid to Mr. Emuveyan, Mr. Emuveyan shall file a short-form discovery motion outlining the disagreement.

DATED this 2nd day of May, 2022.

BY THE COURT:

_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge

---

[11] The sanctions are only as to GRP and Mr. Ewing, except the award of attorneys' fees, which is only against GRP. As noted above, there is insufficient evidence to find Clyde Companies, Inc., committed spoliation.