UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| OGHENETEGA EMUVEYAN,<br><br>   Plaintiff,<br><br>v.<br><br>STEVE EWING; GENEVA ROCK PRODUCTS INC., a Utah corporation; and CLYDE COMPANIES, INC., a Utah corporation,<br><br>   Defendants. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' RENEWED MOTION FOR SANCTIONS (DOC. NO. 217)**<br><br>Case No. 2:19-cv-00616<br><br>Judge Howard C. Nielson, Jr.<br><br>Magistrate Judge Daphne A. Oberg |

Before the court is a Renewed Motion for Sanctions, ("Mot.," Doc. No. 217), filed by Defendants Steve Ewing, Geneva Rock Products, Inc. ("GRP"), and Clyde Companies, (collectively, "Defendants").  Defendants previously brought a motion for sanctions against Plaintiff Oghenetega Emuveyan based on allegations of perjury and failure to supplement discovery responses, which the court granted in part and denied in part.  (*See* Mem. Dec. and Order Granting in Part and Den. in Part Defs.' Mot. for Sanctions Against Pl. for Concealing Evid. and Perjury ("Sanctions Order"), Doc. No. 105.)  Mr. Emuveyan was sanctioned for failing to supplement an interrogatory answer to disclose a pending criminal case against him, but Defendants did not establish Mr. Emuveyan committed perjury.  (*Id.* at 7, 13–14.)

Now Defendants seek dispositive sanctions against Mr. Emuveyan based on new and renewed allegations of false statements and claims of discovery violations.  The court heard oral argument on February 8, 2022, and permitted the parties to file notices of supplemental authority.  (*See* Minute Entry, Doc. No. 243.)  Because Defendants have not established Mr. Emuveyan engaged in sanctionable conduct, their motion is denied.

1

## BACKGROUND

Mr. Emuveyan was employed as mixer truck driver by GRP from February 25, 2014 to December 8, 2017, when he was terminated.  (Compl. ¶¶ 13, 21, Doc. No. 2-1.)  He brought this action against Defendants, alleging they discriminated and retaliated against him based on his race.  (*See generally id.*)  On October 7, 2020, while the parties were engaged in fact discovery, Mr. Emuveyan was arrested, to answer to federal, criminal charges.  (*See* Warrant for Arrest, Doc. No. 36, *United States v. Emuveyan et al.*, 2:20-cr-00286 (D. Utah) ("Criminal Case").)  The criminal indictment accused Mr. Emuveyan of participating in an internet scheme to obtain money and property from victims through "celebrity scams, romance scams, business enterprise fraud, and other scams."  (Indictment, Doc. No. 1, Criminal Case.)

Mr. Emuveyan originally pleaded not guilty, (Minute Entry, Doc. No. 17, Criminal Case), but has since changed his plea, (Minute Entry, Doc. No. 53, Criminal Case).  On September 3, 2021, after the court issued its prior sanctions order, Mr. Emuveyan pleaded guilty to participating in a money laundering conspiracy.  (*See* Statement by Def. in Advance of Guilty Plea and Plea Agreement Pursuant to Fed. R. Crim. P. 11(c (1)(C) ("Plea Statement"), Doc. No. 55, Criminal Case.)  Mr. Emuveyan admitted that as of May 2019, he "agreed with others (implicitly or explicitly) to receive and launder the proceeds of romance scams, including by engaging in interstate wire transactions exceeding $10,000 involving the proceeds of those romance scams that are wire fraud violations of 18 U.S.C. § 1343." (*Id.* ¶ 11.)  He also admitted his participation continued through June 18, 2019, and that he "used bank accounts opened in the name RBE Solutions LLC and ETR Services LLC, entities formed by [Mr. Emuveyan] and [his] wife, to receive and remit money on behalf of others in exchange for a fee."  (*Id.*)

In their original motion for sanctions, Defendants argued Mr. Emuveyan committed perjury by lying about his sources of income, and possibly lying about the extent to which he tried to mitigate damages by applying for jobs.  (*See* Mot. 1, Doc. No. 217.)  In their renewed motion, Defendants contend Mr. Emuveyan's guilty plea and subsequent testimony confirms he committed perjury regarding his sources of income.  (*Id.* at 1–2, 9–10.)  Defendants also allege Mr. Emuveyan gave false testimony regarding responses from job applications, (*id.* at 11), improperly invoked Fifth Amendment protections, (*id.* at 7–8), failed to accurately respond to and supplement discovery responses, (*id.* at 13, 15–18), and destroyed relevant documents, (*id.* at 13).  Lastly, Defendants contend Mr. Emuveyan's deposition conduct as the Rule 30(b)(6) witness for ETR Services and RBE Solutions was improper.  (*Id.* at 14–15.)  Defendants seek dismissal of Mr. Emuveyan's case and recovery of their attorneys' fees for both their previous motion for sanctions, the extended discovery period, and this current motion for sanctions.  (*Id.* at 1.)

## LEGAL STANDARDS

Defendants seek dismissal as a sanction under Rule 37 of the Federal Rules of Civil Procedure, arguing it is the only appropriate sanction under the circumstances.  (Mot. 19, Doc. No. 217.)  Under Rule 37, courts may "issue further just orders" when a party "fails to obey an order to provide . . . discovery."  Fed. R. Civ. P. 37(b)(2)(A).  Courts may also award sanctions for failure to preserve electronically stored information ("ESI"), *id.* at 37(e), and, in certain circumstances, for failure to provide information or supplement a prior response, *id.* at 37(c).  These sanctions can include an order dismissing the action.  *Id.* at 37(b)(2)(A)(v); *id.* at 37(e)(2)(C); *id.* at 37(c)(1)(C).

Courts enjoy "broad inherent power to sanction misconduct and abuse of the judicial

process." *Klein v. Harper*, 777 F.3d 1144, 1147 (10th Cir. 2015).  However, dismissal is "an extreme sanction appropriate only in cases of willful misconduct."  *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992); *see also* Fed. R. Civ. P. 37(e)(2) (requiring a finding "that the party acted with the intent to deprive another party of the information's use" before awarding dismissal).  Except with regard to destruction of ESI, which is governed by Rule 37(e), the court applies the five factors enumerated in *Ehrenhaus* to determine whether dismissal is appropriate:

> (1) the degree of actual prejudice to the non-offending party,
>
> (2) the degree of interference with the judicial process,
>
> (3) the culpability of the offending party,
>
> (4) whether the court warned the party in advance that default judgment would be a likely sanction for noncompliance, and
>
> (5) the efficacy of lesser sanctions

*See Ehrenhaus*, 965 F.2d at 921; *Celtig, LLC v. Patey*, No. 2:17-cv-01086, 2021 U.S. Dist. LEXIS 16429, at *5 (D. Utah Jan. 27, 2021) (unpublished).  These factors do not establish a rigid test, nor are they exhaustive or entitled to equal weight.  *Chavez v. City of Albuquerque*, 402 F.3d 1039, 1044 (10th Cir. 2005).  They are simply factors the court should consider.  *Id.*  Because dismissal is "a harsh sanction," *id.*, "[o]nly when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits is dismissal an appropriate sanction."  *Ehrenhaus*, 965 F.2d at 921 (internal quotation marks omitted).

## ANALYSIS

Defendants allege Mr. Emuveyan engaged in such significant discovery violations, his actions warrant dismissal of his case.  (Mot. 1, Doc. No. 217.)  The crux of Defendants' motion is the allegation that Mr. Emuveyan perjured himself.  In addition, Defendants claim Mr.

4

Emuveyan improperly invoked Fifth Amendment protections, failed to respond to and supplement discovery responses, destroyed documents, and refused to answer questions and was generally unprepared in his capacity as a 30(b)(6) witness.  Each allegation is addressed in turn.

1. <u>False Statements</u>

Defendants allege Mr. Emuveyan committed perjury regarding income he received after his termination and his attempt to mitigate damages through job applications.  (Mot. 9, 11, Doc. No. 217.)  However, a showing of perjury requires specific elements Defendants have made no attempt to establish.[1]  Rather than focusing on the elements of perjury specifically, the court assesses whether Mr. Emuveyan knowingly gave false, material testimony such that sanctions are warranted—since, as Defendants clarified at the hearing, the claim of false statements forms the foundation of their argument.

a. *Sources of Income*

On December 17, 2020, Mr. Emuveyan testified in his second deposition that the only income, or money, coming into his household since he was terminated from GRP was his wife's income and his earnings from Turo, Lyft, and Uber.  (*Id.* at 9.)

> Q. And in terms of income coming into your house since you were terminated, is it just your wife's income and the income you've earned from Turo, Lyft and Uber?
> A. Yes
> Q. No other money coming into your home?
> A. Nope.
> Q. Do you have any savings or other money you've been able to use?
> A. No. Got nothing, zero.

---

[1] To establish perjury, Defendants need to show Mr. Emuveyan "(1) g[ave] false testimony; (2) concerning a material matter; and (3) with willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory."  *United States v. Quarrell*, 310 F.3d 664, 682 (10th Cir. 2002).  These factors are helpful in assessing Defendants' claims of false statements.

(December 17, 2020 Dep. of Oghentega Emuveyan ("Emuveyan Second Dep.") 166:13–22, Doc.

No. 218-15; *see also* Mot. 9 n.41, Doc. No. 217.)  He also testified that all his income was

reported on his tax returns over the years.  (Mot. 9, Doc. No. 217.)

> Q. So did you report all of your income on your tax returns over the years?
> A. Oh, yes, I did.
> Q. So, for example, you've reported, you've always reported all of your Uber income on your tax returns?
> A. Yes.
> Q. And the same with Lyft?
> A. Well, I reported everything on my tax return.

(Emuveyan Second Dep. 35:10–19, Doc. No. 218-15.)  Defendants allege these statements are

untrue because when pleading guilty, Mr. Emuveyan admitted he "used bank accounts opened in

the name RBE Solutions LLC and ETR Services LLC . . . to receive and remit money on behalf

of others *in exchange for a fee*."  (Plea Statement ¶ 11, Doc. No. 55, Criminal Case (emphasis

added); *see also* Mot. 10, Doc. No. 217.)  On October 1, 2021, at his third deposition, Mr.

Emuveyan confirmed he kept some money from the criminal scheme.  (Reply in Supp. of Defs.'

Renewed Mot. for Sanction ("Reply") 4–5, Doc. No. 236.)

> Q. Okay. The criminal enterprise, for what period of time did that go on?
> A. April 2019, I believe, to June 2019, I believe.
> Q. And how much money was deposited into you and your wife's accounts as part of that — as part of that criminal scheme?
> A. I don't know.
> Q. You have no idea?
> A. No clue.
> Q. Was it hundreds of thousands?
> A. I don't know, ma'am.
> Q. Okay. How much money did you and your wife get to keep?
> A. So, I don't know either.
> Q. But, there was some amount that you got to keep; right?
> A. Yes.

(October 1, 2021 Dep. of Oghentega Emuveyan ("Emuveyan Third Dep.") 34:24–35:12, Doc.

No. 218-2.)  Defendants contend this money was not reported on Mr. Emuveyan's tax returns.

(Mot. 9–10, Doc. No. 217.)

In his briefing, Mr. Emuveyan summarily argues Defendants did not present evidence of

false testimony.  (Pl's Mem. in Opp'n to Defs.' Renewed Mot. for Sanctions ("Opp'n") 4, 7,

Doc. No. 224.)  But at the hearing, Mr. Emuveyan's counsel suggested Mr. Emuveyan might

have been confused as to the meaning of "coming in," especially since he is a non-native English

speaker.[2]  And in his brief, Mr. Emuveyan argues any money he received from the criminal

scheme is immaterial because he will pay it back as restitution.  (Opp'n 4, Doc. No. 224.)

It is hard to square Mr. Emuveyan's December 2020 testimony that the only money

coming into his house after December 2017 was his wife's income and his income from Turo,

Lyft, and Uber, (Emuveyan Second Dep. 166:13–22, Doc. No. 218-15; Mot. 9 n. 41, Doc. No.

217)—with his October 2021 testimony that he and his wife kept at least some money from the

criminal scheme between April and June 2019, (Emuveyan Third Dep. 34:24–35:12, Doc. No.

218-2; Reply 4–5, Doc. No. 236).  However, Defendants have not established Mr. Emuveyan

knowingly made these contradictory statements with the intent to deceive.  While an established,

purposeful, intent to mislead may be sufficient to warrant sanctions, Mr. Emuveyan's

contradictory testimony may have resulted from confusion or mistake—particularly where

English is not his first language.  Unquestionably, Mr. Emuveyan's contradictory testimony

bears on his credibility.  But Defendants have not established Mr. Emuveyan engaged in perjury

---

[2] *See also* Emuveyan Third Dep. 36:15–24, Doc. No. 218-2 ("Q. We're talking about all the monies that were coming into the house.  I understand that part of the monies that were coming into your house were some settlement monies; is that right? A. Now, coming in – came in, is that what you're asking? Q. Yes. A. So, coming in sounds like its continuing. So, I just want to be careful here. Do you mean like came in in that period?")

or intentionally lied, nor have they provided legal authority holding mere contradictory statements warrant sanctions. *C.f. Chavez*, 402 F.3d at 1045 (dismissing case based on admitted perjury regarding statements material to the determination of the case). Defendants may argue credibility issues to the jury. It is up to the jury to "resolve conflicts in the testimony [and] to weigh the evidence." *Young v. Sirmons*, 486 F.3d 655, 666 (10th Cir. 2007). This contradictory statement is not so clearly knowingly and intentionally made with the intent to deceive as to warrant sanctions.

       *b.  Job Applications*

Defendants also argue Mr. Emuveyan's testimony about the results of his job search was perjurious. (Mot. 11, Doc. No. 217.) In his second deposition, Mr. Emuveyan testified:

> A. I've been looking. I applied for about a minimum of 74 jobs, a
>    minimum, and I think there are a few jobs I applied for not
>    knowing I already applied, but I applied for a minimum of 74
>    jobs. And I did not get a single callback…
>
>    …
>
> Q. Okay. You're saying with those 74 applications from 2017 to present,
>    you haven't received a single callback?
> A. I have not and my phone number is still the same.

(Emuveyan Second Dep. 19:22–20:1, 21:25–22:4, Doc. No. 218-15.) Defendants contend this is false because they learned five employers tried to contact Mr. Emuveyan regarding his job application but he never responded. (Mot. 12, Doc. No. 217.) In his third deposition, Mr. Emuveyan clarified his statement.

> Q. Is that true that no one ever responded to any of your applications?
> A. "Responded" meaning what? Sent an e-mail back?
> Q. Responded in any way.
> A. I don't remember.
> Q. You don't remember?
> A. I do not remember every call I received. I think that's the word I used in my
>    last deposition. Even if I received a call, the call didn't go well.

(Emuveyan Third Dep. 124:10–19, Doc. No. 218-2.).  After his final deposition, Mr. Emuveyan produced two emails from employers regarding his job applications—one extending a contingent job offer and another requesting an assessment and interview.  (Mot. 12, Doc. No. 217.)

Defendants' claim fails because they have not presented evidence Mr. Emuveyan's testimony was false.  That is, there is no proof he received an actual call back from a job application.  The evidence shows only that he received two emails regarding job applications and five employers say they tried to reach him.[3]  Presumably, Defendants meant "callback" as a request for an interview, not in the literal sense of a phone call from the prospective employer. But Mr. Emuveyan appears to have believed Defendants were asking about actual phone calls, and he implicitly acknowledged he may have received some; he just could not remember.  (*See* Emuveyan Third Dep. 124:10–19, Doc. No. 218-2.)  Even if Mr. Emuveyan's response was misleading, it cannot be considered false testimony unless Defendants can establish it is untrue as a literal matter.  *Cf. United States v. Hale*, 762 F.3d 1214, 1220 (10th Cir. 2014) ("Courts have required near-absolute clarity from the questioner in order to support a perjury charge."). Defendants have failed to establish Mr. Emuveyan knowingly testified falsely.  Instead, any inconsistency may have resulted from confusion, mistake, or faulty memory.

To the extent Mr. Emuveyan's testimony reveals contradictions—when considered in conjunction with the emails he produced and the statements from prospective employers regarding their attempts to contact Mr. Emuveyan—it is an issue for the factfinder.  *See Young*, 486 F.3d at 666; *see also Equal Emp. Opportunity Comm'n v. Holmes & Holmes Indus.*, No.

---

[3] In his second deposition, Defendants' counsel asked Mr. Emuveyan if the prospective employers had his email address but did not specifically ask if any employers emailed him. (Emuveyan Second Dep. 22:5–11, Doc. No. 218-15.)

2:10-cv-955, 2012 U.S. Dist. LEXIS 146707, *47 (D. Utah Oct. 10, 2012) (unpublished) ("Even if there is a dispute as to an underlying fact that could be objectively proven . . . [a] jury can determine whether a party truthfully remembers something.").  Defendants have simply not established Mr. Emuveyan willfully gave false testimony with regard to his job applications.

    2.  <u>Improper Assertion of the Fifth Amendment</u>

Defendants next take issue with Mr. Emuveyan's repeated invocation of the Fifth Amendment during his deposition.  (Mot. 7, Doc. No. 217.)  Defendants claim Mr. Emuveyan inconsistently invoked the Fifth Amendment and did so without basis.  (*Id.* at 7–8.)  Specifically, Defendants complain Mr. Emuveyan claimed Fifth Amendment protection over questions "directly relevant to the issues in this case and to Defendants' defenses," (*id.* at 7), which "deprived [] Defendants of information they need to defend [the] case," (Reply 13, Doc. No. 236).

Mr. Emuveyan does not give up his rights under the Fifth Amendment simply by pleading guilty.  *See United States v. Rivas Macias*, 537 F.3d 1271, 1280 (10th Cir. 2008) ("We thus squarely reject the proposition that an individual waives the Fifth Amendment privilege by pleading guilty to a crime.")  The Fifth Amendment protects Mr. Emuveyan from having to disclose incriminating evidence.  "[T]o the extent a witness legitimately claims that revelation of matter may incriminate him, it is effectively beyond the scope of discovery under [Federal Rule of Civil Procedure] 26(b)(1), and the court is without power to compel answers."  *Secs. & Exch. Comm'n v. Thomas*, 116 F.R.D. 230, 234 (D. Utah 1987).  Fifth Amendment privilege may be asserted "whenever the witness has reasonable cause to apprehend danger from a direct answer." *United States v. Jones*, 703 F.2d 473, 476 (10th Cir. 1983) (internal quotation marks omitted).

But a witness cannot invoke "a blanket fifth amendment privilege . . . prior to the propounding of any questions." *Thomas*, 116 F.R.D. at 234.

While Mr. Emuveyan has pleaded guilty to participating in a money laundering conspiracy, his plea statement contains only limited details about the offense. It does not include information as to how much money Mr. Emuveyan ran through his accounts, how much money he kept, the details of the conspiracy, or the time Mr. Emuveyan spent working on the conspiracy. If Mr. Emuveyan has reasonable cause to apprehend danger of self-incrimination from a direct answer to these (or other) questions, he is entitled to assert the Fifth Amendment privilege. However, it does appear Mr. Emuveyan improperly invoked the privilege over topics where he has no reasonable cause to apprehend such danger. For example, he claimed the privilege over anything he does not remember.

Defendants seek dismissal based on these actions. But Defendants chose to bypass the procedures established to resolve such issues. If Defendants believed Mr. Emuveyan improperly invoked the Fifth Amendment, they could have sought timely relief. During the actual deposition, Defendants could have arranged to contact the assigned judge by telephone.[4] *See* DUCivR 37-1(e). If this did not resolve the issue, they could have filed a motion to compel pursuant to Rule 37(a)(3) of the Federal Rules of Civil Procedure. Any claim that Mr. Emuveyan waived his Fifth Amendment privilege by inconsistently asserting it, could also have been raised in these ways. But Defendants made no attempt to remedy these problems.

If Defendants had properly challenged Mr. Emuveyan's claim of Fifth Amendment protection, Mr. Emuveyan would have had a chance to correct or defend his conduct. Moreover,

---

[4] This would have resolved at least some of the concerns Defendants raise because the court would have made clear Mr. Emuveyan could only assert the privilege when he had reasonable cause to apprehend danger from a direct answer.

the parties would have provided the relevant legal standards governing claims of Fifth

Amendment protection—and argument as to whether Mr. Emuveyan's claims were proper—

giving the court the benefit of a developed record on this issue.  Instead, Defendants chose to

raise this issue in a motion for dispositive sanctions, without first establishing Mr. Emuveyan's

Fifth Amendment protection claims were improper under the law.  Likewise, Defendants have

provided no legal authority establishing dismissal of the claims is a fitting sanction, even

assuming Mr. Emuveyan's assertions of privilege were improper.

Defendants cite various cases pertaining to adverse inferences arising from improper

assertions of Fifth Amendment privilege.  There is no doubt adverse inferences may be drawn

from an assertion of Fifth Amendment privilege in some circumstances.  *Thomas*, 116 F.R.D. at

234; *see also Mid-America's Process Serv. v. Ellison*, 767 F.2d 684, 686 (10th Cir. 1985) ("The

individual petitioners unquestionably may assert a Fifth Amendment privilege in this civil case

. . . in which event they may have to accept certain bad consequences that flow from that

action.").  But Defendants do not seek an adverse inference as a consequence of Mr. Emuveyan's

assertion of the Fifth Amendment; they seek dismissal of the case, without providing any legal

support for this approach.[5]

_____

[5] Although Defendants note in passing that "Plaintiff's actions warrant an adverse inference in
favor of Defendants," they also argue "any sanction other than dismissal with prejudice" is
insufficient.  (*See* Mot. 25, Doc. No. 217.)  This passing comment is insufficient to request an
adverse inference.  Moreover, Defendants have made no attempt to establish an adverse
inference is warranted.  *See, e.g.*, *Farrah v. Chacon*, No. 18-cv-00895, 2018 U.S. Dist. LEXIS
223400, at *13–14 (D. Colo. Dec. 6, 2018) (unpublished) ("[T]he fact to be established by the
adverse inference must be tethered to some other probative evidence admitted against the person
invoking the Fifth Amendment. In other words, there must be some factual basis for the adverse
inference—some independent evidence of the fact sought to be established by the inference.")

3.  <u>Destruction of Evidence</u>

Next, Defendants seek sanctions for Mr. Emuveyan's destruction of evidence: his deletion of job-seeking emails.  (Mot. 13, Doc. No. 217.)  Destruction of evidence is problematic when it amounts to spoliation.  Spoliation is the destruction or significant alteration of evidence . . . or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."  *Xyngular Corp. v. Schenkel*, 200 F. Supp. 3d 1273, 1309 (D. Utah 2016) (internal quotation marks omitted); *see also Mglej v. Gardner*, No. 2:13-cv-00713, 2021 U.S. Dist. LEXIS 163209, at *4 (D. Utah Aug. 27, 2021) (unpublished).  Spoliation is only at issue where the offending party has a duty to preserve the evidence.  *See Xyngular Corp.*, 200 F. Supp. 3d at 1309.

To establish spoliation, Defendants must first show Mr. Emuveyan had a duty to preserve the evidence at the time he destroyed it.  The duty to preserve arises when a litigant knows or should know "litigation [is] imminent."  *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007).  Defendants allege Mr. Emuveyan destroyed ESI.  Spoliation of ESI is governed by Rule 37(e) of the Federal Rules of Civil Procedure.  Under Rule 37(e), if ESI "is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," the court may award sanctions.  Fed. R. Civ. P. 37(e).  Specifically, the court:

> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>> (A) presume that the lost information was unfavorable to the party;
>> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>> (C) dismiss the action or enter a default judgment

*Id.*

Mr. Emuveyan admitted he deleted emails regarding job applications.  (Reply 14, Doc. No. 236; Emuveyan Third Dep. 136:13–22, Doc. No. 218-3.)  From Mr. Emuveyan's deposition, it appears he deleted confirmation emails received when applying for jobs.  (*See* Emuveyan Third Dep. 136:6–25, Doc. No. 218-3.)  Defendants claim Mr. Emuveyan deleted these emails after his duty to preserve arose because he began searching for jobs long after he decided to sue. (Mot. 13, Doc. No. 217.)  Even assuming this is true, Defendants have failed to establish spoliation of ESI.  For instance, Defendants have not established the ESI cannot be restored or replaced through additional discovery.  *See* Fed. R. Civ. P. 37(e).  Neither party provided briefing as to whether Defendants' subpoenas to the prospective employers replaces the ESI. Further, even assuming Defendants are prejudiced by the deletion of confirmation emails, they have not established dismissal is the only sanction that could cure the prejudice.  *See* Fed. R. Civ. P. 37(e) (noting a court "may order measures no greater than necessary to cure the prejudice"). Lastly, Defendants failed to establish Mr. Emuveyan deleted the emails with the intent to deprive Defendants of their use in the litigation—which is a prerequisite for a sanction of dismissal.  Fed. R. Civ. P. 37(e)(2); *Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 66 (S.D.N.Y. 2020).

4. Failure to Disclose Information and Supplement Discovery Responses

Defendants' remaining allegations against Mr. Emuveyan personally pertain to his failures to disclose and to supplement his discovery responses.  For example, Defendants contend Mr. Emuveyan failed to supplement discovery responses with financial records and job application materials, and failed to identify all his efforts to mitigate damages.  (Reply 15–16, Doc. No. 236.)  Defendants further allege Mr. Emuveyan failed to respond to their fourth set of discovery requests.  (Mot. 17, Doc. No. 217.)

Regarding Defendants' claim that Mr. Emuveyan failed to respond to discovery requests, rather than filing a motion to compel, Defendants seek dispositive sanctions.  But they provide no legal authority supporting sanctions for an alleged failure to respond in the absence of a motion to compel.  *See COP Coal Dev. Co. v. Rushton*, No. 2:10-cv-39, 2013 U.S. Dist. LEXIS 11239, at *14 (D. Utah Jan. 28, 2013) (unpublished) ("To obtain sanctions under Rule 37(b) or (d), a party must first seek to confer in good faith with the opposing party and file a motion to compel."); *cf.* DUCivR 37-1(b) ("If the discovery disputes remain after reasonable efforts, and the parties need a court order to resolve the dispute, the parties . . . must file a Short Form Discovery Motion.").  Because Defendants chose not to file a motion to compel, this discovery dispute was not fully developed.  For instance, it is apparent the parties disagree as to Mr. Emuveyan's discovery obligations.  (*See* Reply 15–16, Doc. No. 236.)  This dispute could easily have been addressed and resolved in a discovery order, if the issue had been raised to the court. *See* Fed. R. Civ. P. 37(a) ("On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery."); Fed. R. Civ. P. 37(a)(3)("A party seeking discovery may move for an order compelling an answer, designation, production, or inspection."); DUCivR 37-1.  As it stands, Defendants have not even established Mr. Emuveyan violated his discovery obligations.  Among other things, it is unclear whether Mr. Emuveyan simply lacked responsive documents or information or whether he withheld it on improper grounds.

Defendants also argue Mr. Emuveyan failed to supplement his discovery responses in violation of Rule 26(e) of the Federal Rule of Civil Procedure.  (Reply 9, Doc. No. 236.)  Mr. Emuveyan disputes this, arguing he has no duty to supplement where the information is otherwise known to the Defendants.  (Opp'n 10 n.3, Doc. No. 224.)  Rule 26(e) requires a party

to supplement its response "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process." Fed. R. Civ. P. 26(e)(1).

From the parties' briefing, it is impossible to determine whether Mr. Emuveyan failed to supplement in violation of Rule 26. The court has no way to determine, for example, whether the same information was otherwise made known to Defendants during the discovery process such that supplementation was unnecessary. Mr. Emuveyan also appears to claim he has no additional responsive documents. (Ex. L to Mot., Doc. No. 217-12.) Defendants have not shown this is untrue. Accordingly, Defendants have not established Mr. Emuveyan violated his duty to supplement his discovery responses.

Where Defendants failed to file motions to compel and failed to establish Mr. Emuveyan engaged in discovery violations, sanctions are not warranted.

5.   Conduct as a 30(b)(6) Witness

The remainder of Defendants' allegations against Mr. Emuveyan relate to his role as a Rule 30(b)(6) witness for two entities, ETR Services and RBE Solutions. Defendants contend Mr. Emuveyan did not prepare for ETR Services' deposition and could not answer basic questions in both ETR Services' and RBE Solutions' depositions. (Mot. 14, Doc. No. 217.) Mr. Emuveyan also allegedly failed to produce requested documents, (*id.* at 15), and invoked the Fifth Amendment on behalf of the entities, (*id.*; Reply 16, Doc. No. 236). Mr. Emuveyan argues this is irrelevant to the current motion because he was acting in his capacity as a Rule 30(b)(6) witness, not in his personal capacity. (Opp'n 3, 6, Doc. No. 224.) The court invited the parties

to file notices of supplemental authority as to whether a witness may be individually sanctioned for conduct as a Rule 30(b)(6) witness.

Defendants provided supplemental authority which does not directly support its position. For instance, sanctioning a party for the conduct of her retained expert is inherently different than sanctioning a party for her conduct as a designee of subpoenaed nonparty.  *See, e.g.*, *Carroll v. Allstate Fire & Cas. Ins. Co.*, Civil Action No. 12-cv-00007, 2014 U.S. Dist. LEXIS 28061, at *40 (D. Colo. Mar. 4, 2014) (unpublished).  Sanctioning an entity party for its failure to adequately prepare its Rule 30(b)(6) witness is also inherently different than sanctioning an individual party for her conduct as a Rule 30(b)(6) witness of a nonparty.  *See, e.g.*, *Reilly v. Natwest Markets Grp. Inc.*, 181 F.3d 253, 269 (2d Cir. 1999); *Cherrington Asia Ltd. v. A & L Underground, Inc*., 263 F.R.D. 653, 662 (D. Kan. 2010).

What Defendants' supplemental authority shows is that a deponent may be sanctioned for her behavior during a deposition.  (*See* Supp. Authority, Doc. No. 244.)  For instance, the authority supports the premise that the court could sanction ETR Services and RBE Solutions— or even Mr. Emuveyan in his capacity as a 30(b)(6) witness—if Defendants' motion were brought against the entities.  But Defendants brought their motion against Mr. Emuveyan in his personal capacity, without providing legal authority supporting individual sanctions against a party for his conduct as a nonparty designee.  And there can be no question the sanction Defendants seek, dismissal of the case, is a sanction against Mr. Emuveyan in his personal capacity, not a sanction related to his capacity as a Rule 30(b)(6) designee.

As before, this reflects Defendants' choice not to utilize the procedures for resolving deposition disputes.  For example, Defendants could have called the assigned judge when Mr. Emuveyan asserted the Fifth Amendment on behalf of the entities.  But they chose not to do so.

Defendants also could have sought additional depositions of the entities based on Mr. Emuveyan's lack of preparation as the Rule 30(b)(6) designee.  But they did not.  Instead, they chose to add this to their list of grievances.

Where Defendants have not established the court may dismiss Mr. Emuveyan's case as a sanction for his conduct as a nonparty's Rule 30(b)(6) designee—and where the motion is not brought against ETR Services or RBE Solutions—the court cannot find this conduct sanctionable.

6. *Ehrenhaus* Factors

Defendants argue the only sanction fitting the circumstances is the extreme sanction of dismissal.  However, even considering Defendants' claims in totality, Defendants have failed to show Mr. Emuveyan's conduct constitutes a discovery violation, let alone a violation warranting dismissal.  Because Defendants have failed to establish misconduct by Mr. Emuveyan, it is ineffective to assess the *Ehrenhaus* factors.

For instance, the court cannot assess the efficacy of lesser sanctions, *Ehrenhaus*, 965 F.2d at 921, where Defendants have not established any sanctions are warranted.  Similarly, Defendants have not established they have suffered prejudice due to wrongful action by Mr. Emuveyan because they have not established wrongful action.  *See id.*  Defendants claim Mr. Emuveyan hindered their ability to prove Mr. Emuveyan failed to mitigate his damages.  (Mot. 24, Doc. No. 218.)  And they claim Mr. Emuveyan unnecessarily prolonged the case, increasing litigation costs.  (*Id.* at 25.)  The problem with Defendants' argument is that they did not

establish Mr. Emuveyan intentionally testified falsely or that he violated discovery rules. In the absence of this showing, no prejudice can be attributed to Mr. Emuveyan's actions.[6]

For the same reason, the next *Ehrenhaus* factor, the amount of interference with the judicial process, is inapplicable. Notably, a party "interferes with the judicial process when it fails to abide by discovery orders," *Burgi v. Awolf Fitness*, No. 2:19-cv-00151, 2021 U.S. Dist. LEXIS 35993, at *11 (D. Utah Feb. 25, 2021) (unpublished) (internal quotation marks omitted), or submits false evidence, *King v. Fleming*, 899 F.3d 1140, 1151 (10th Cir. 2018). But Defendants have not established Mr. Emuveyan failed to abide by discovery orders or knowingly testified falsely. Because Defendants chose not to bring motions challenging the discovery conduct outlined in their renewed motion for sanctions, the court entered no discovery orders relevant to this conduct. Similarly, the court cannot rely on "culpability of the litigant" where Defendant did not establish Mr. Emuveyan "acted with willfulness, bad faith, and fault" or made calculated decisions for strategic use in litigation. *Xyngular v. Schenkel*, 890 F.3d 868, 874 (10th Cir. 2018). The final *Ehrenhaus* factor—whether the court warned Mr. Emuveyan of the potential for dismissal—would weigh in favor of dismissal *if* Defendants had established Mr. Emuveyan violated any discovery rules or court orders.[7] But they did not.

As Defendants acknowledged at the hearing, they made the strategic decision to file a motion for sanctions instead of discovery motions because they believed Mr. Emuveyan's discovery violations had simply become too reprehensible. This choice to pursue a tactic of

---

[6] The litigation was prolonged by Mr. Emuveyan's initial failure to supplement discovery responses, because the court permitted Defendants to conduct additional discovery as a result. (*See* Sanctions Order, Doc. No. 105.) But that issue was fully addressed previously, and Defendants have not established the litigation was prolonged in relation to any claims made in the current motion.

[7] In its Sanctions Order, the court warned Mr. Emuveyan that future discovery violations may result in dismissal. (Sanctions Order 13, Doc. No. 105.)

stockpiling an ongoing list of grievances instead of addressing problems with Mr. Emuveyan and the court as they arose, leaves the parties and the court in an impossible position.  When challenges are brought in a timely fashion, the parties can meet and confer in an effort to reach a solution.  The court can guide the parties' actions after benefitting from a full adversarial exploration of the issues.  Remedies can be ordered.  And offending parties can defend their conduct or correct course.  But when complaints are catalogued and collected without being raised, it undermines the discovery dispute process.  This all-or-nothing approach deprives the court of the ability to mitigate or resolve problems on an ongoing basis by imposing lesser sanctions.  It is hard to imagine any circumstance in which this approach to litigation would merit the harsh sanction of dismissal.

7.   Attorney Fees

Defendants seek their attorneys' fees incurred in connection with this motion, their original motion for sanctions, and the reopened discovery period resulting from their original motion.  (Mot. 1, Doc. No. 217.)  As explained above, Defendants have not established Mr. Emuveyan engaged in sanctionable conduct.  Accordingly, no attorneys' fees are merited or awarded in connection with this motion.  For the same reason, no award of fees is justified by the additional discovery conducted during the reopened discovery period.

In their original motion for sanctions, Defendants sought all costs and fees associated with discovery conducted up to the date of their motion.  (Defs.' Mot. for Sanctions Against Pl. for Concealing Evid. and Perjury 31, Doc. No. 75.)  But the court rejected the argument that Defendants incurred significant, unnecessary discovery costs due to Mr. Emuveyan's failure to disclose the criminal case.  (Sanctions Order 11–12, Doc. No. 105.)  Instead, the court required Mr. Emuveyan to supplement his response to an interrogatory, and reopened fact discovery for

Defendants only.  (*Id.* at 14.)  Defendants have provided no basis for reconsideration or reversal of this order, such that attorneys' fees should now be awarded. Accordingly, Defendants' request for a fee award is denied.

## CONCLUSION

Defendants have not established that Mr. Emuveyan engaged in sanctionable conduct. Accordingly, their motion for sanctions, (Doc. No. 217), seeking dismissal of the action, is DENIED.

DATED this 5th day of May, 2022.

BY THE COURT:

Daphne A. Oberg
United States Magistrate Judge