IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| OGHENETEGA EMUVEYAN,<br><br>Plaintiff,<br><br>v.<br><br>STEVE EWING; GENEVA ROCK PRODUCTS, INC.; and CLYDE COMPANIES, INC.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:19-cv-616-HCN<br><br>Howard C. Nielson, Jr.<br>United States District Judge |

The court held a three-week jury trial and entered judgment on the jury's verdict in this action. The parties then filed a flurry of post-trial motions and competing bills of costs. Among other things, Plaintiff Oghenetega Emuveyan renews his motion for a mistrial and Defendants Steve Ewing, Geneva Rock Products, Inc., and Clyde Companies, Inc. move to redact portions of the trial transcript and to seal portions of one of Mr. Emuveyan's post-trial briefs. The court grants Mr. Emuveyan's motion for a mistrial in part and denies it in part. The court grants the Defendants' motions to redact and to seal.

I.

Geneva Rock is a construction services company that operates in Utah and supplies ready-mix concrete, sand, and gravel. *See* Dkt. No. 584 at 52:1–9, 164:1–9. Clyde Companies is Geneva Rock's parent company. *See id.* at 55:5–12. Mr. Emuveyan, who is of African descent and was not born in the United States, *see* Dkt. No. 588 at 62:6, was a mixer truck driver for Geneva Rock from June 2014 until his termination in December 2017, *see id.* at 100:19, 134:11–13, 224:2–10. Mr. Ewing is an employee of Geneva Rock and was Mr. Emuveyan's direct supervisor. *See* Dkt. No. 584 at 37:19–21. After his termination from Geneva Rock, Mr. Emuveyan brought this action, asserting (among others) the claims for hostile work environment,

disparate treatment, and retaliation under 42 U.S.C. § 1981 on which the parties ultimately proceeded to trial. *See* Dkt. No. 394 at 5–8 ¶¶ 23–41.

The trial was divided into three parts: the jury first determined liability and compensatory damages, next determined whether punitive damages were warranted, and finally determined the amount of punitive damages to be awarded. At the end of the first part of the trial, the jury found for Mr. Emuveyan and against Geneva Rock with respect to Mr. Emuveyan's hostile-work-environment claim, and it awarded Mr. Emuveyan $76,998.25 in compensatory damages. *See* Dkt. No. 578 at 1–5, 7–12. Apart from this claim against this Defendant, the jury otherwise found against Mr. Emuveyan and for the Defendants. After the jury verdict was read, Mr. Emuveyan moved for a mistrial, alleging inconsistencies in the jury's findings and juror misconduct. *See* Dkt. No. 596 at 61:20–62:12. The court reserved ruling on the motion and the trial proceeded to the punitive damages phases. After first determining that punitive damages were warranted, the jury then awarded Mr. Emuveyan $1,021,537.23 in punitive damages against Geneva Rock. *See* Dkt. Nos. 579, 580.

After the jury was excused, the court denied the motion for a mistrial without prejudice, directing Mr. Emuveyan to refile the motion, if he wished to do so, within 28 days of the entry of judgment. *See* Dkt. No. 597 at 119:16–20. Mr. Emuveyan now renews that motion under Federal Rule of Civil Procedure 50(b). *See* Dkt. No. 581. As noted, the Defendants also move to redact portions of the trial transcripts and to seal portions of one of Mr. Emuveyan's post-trial briefs. *See* Dkt. Nos. 610, 633.

## II.

The court first addresses Mr. Emuveyan's renewed motion for a mistrial.[1] Mr. Emuveyan argues that the court should declare a mistrial based on "irreconcilable inconsistencies in the jury's answers on the special verdict form" and "prejudicial misconduct of the jurors." Dkt. No. 581 at 6. The Defendants respond that the jury's answers were "not irreconcilably inconsistent" because the jury could have found that Mr. Emuveyan was "constructive[ly] discharge[d]" as a result of the "hostile work environment" it found, which would explain why it awarded him damages for lost wages and benefits despite finding he had not been subjected to "a tangible employment action" in connection with the hostile work environment. Dkt. No. 602 at 9–12.

Mr. Emuveyan agrees to stipulate to this understanding of the jury's verdict so long as he is "permitted to seek the equitable remedies associated with a constructive discharge (front pay or reinstatement)." Dkt. No. 615 at 5–6. The court grants Mr. Emuveyan's motion for a mistrial to the extent he now seeks an opportunity to request those equitable remedies but otherwise denies the motion.

### A.

A motion for a mistrial "call[s] for an examination of the prejudicial impact of an error or errors when viewed in the context of an entire case," and a "district court may only disturb the jury's verdict if the alleged prejudicial errors impaired the movant's right to a fair and impartial trial." *Owens v. Unified Gov't of Wyandotte Cnty. & Kan. City, Kan.*, 100 F.4th 1177, 1181 (10th Cir. 2024) (cleaned up). If, as here, a party alleges "a fatal inconsistency among the jury's

---

[1] It is not clear that a mistrial, rather than a "new trial," is the proper remedy for a jury verdict whose "answers are . . . inconsistent." Fed. R. Civ. P. 49(b)(3); *see also Diamond Shamrock Corp. v. Zinke & Trumbo, Ltd.*, 791 F.2d 1416, 1423 (10th Cir. 1986). No party raised this issue at trial or in post-trial briefing, however, and even if the court viewed Mr. Emuveyan's request as a motion for a new trial, it would reach the same conclusions.

findings and that they cancel one another out," then "it is the duty of the court[] to attempt to harmonize the answers, if it is possible under a fair reading of them." *Gallick v. Baltimore & Ohio R.R. Co.*, 372 U.S. 108, 119 (1963). Unless "the jury's answers are logically incompatible, thereby indicating that the jury was confused or abused its power," the court "must accept any reasonable explanation that reconciles the jury's verdict." *Culp v. Remington of Montrose Golf Club, LLC*, 133 F.4th 968, 983 (10th Cir. 2025) (cleaned up). In short, "[i]f there is any plausible theory that supports the verdict, the reviewing court must affirm the judgment." *Johnson v. ABLT Trucking Co.*, 412 F.3d 1138, 1144 (10th Cir. 2005), *abrogated on other grounds by*, *Dietz v. Bouldin*, 579 U.S. 40 (2016), *as recognized in*, *Culp*, 133 F.4th at 990–91.

Mr. Emuveyan contends that there are three irreconcilable inconsistencies in the jury's answers on the verdict form: (1) the jury found that Mr. Ewing was not liable for subjecting Mr. Emuveyan to a hostile work environment but still answered questions it was directed to skip if it found for Mr. Ewing on this claim, (2) the jury awarded Mr. Emuveyan damages for lost wages and benefits even though it found that the Defendants' unlawful discrimination did not result in a tangible employment action, and (3) the jury wrote "$0" in the space for nominal damages awards against Mr. Ewing and Geneva Rock even though it awarded Mr. Emuveyan compensatory damages against Geneva Rock and found Mr. Ewing not liable on any claim. *See* Dkt. No. 581 at 2–4. The court will address each of these issues in turn.

1.

The jury found Mr. Ewing not liable for subjecting Mr. Emuveyan to a hostile work environment in Question 2 of the verdict form. *See* Dkt. No. 578 at 2. The instructions directed the jury to "proceed to Question No. 6" if it reached that conclusion. *Id.* Nevertheless, the jury answered Questions 3, 4, and 5, which related to the *Faragher-Ellerth* defense to employer liability that would apply only if Mr. Ewing was liable for subjecting Mr. Emuveyan to a hostile

work environment. Mr. Emuveyan argues that because the jury answered the *Faragher-Ellerth* questions, "it is unclear whether the jury intended to find in favor of Mr. Emuveyan or Mr. Ewing" on the hostile-work-environment claim. Dkt. No. 581 at 3.

While there was no need for the jury to answer the questions relating to the *Faragher-Ellerth* defense given its finding that Mr. Ewing was not liable for subjecting Mr. Emuveyan to a hostile work environment, the court discerns no inconsistency between the jury's answers to these questions and that finding. In its answers to the *Faragher-Ellerth* questions, the jury found that the hostile work environment did not result in a tangible employment action, that Geneva Rock did not maintain an effective complaint procedure, and that Mr. Emuveyan did not unreasonably fail to use Geneva Rock's complaint procedure. *See* Dkt. No. 578 at 2–3. These answers were unnecessary, but none of them is in any way inconsistent with the jury's finding for Mr. Ewing on Mr. Emuveyan's hostile-work-environment claim. After all, the *Faragher-Ellerth* questions related to Geneva Rock's liability, not Mr. Ewing's. Further, the verdict form shows that the jury allocated all compensatory damages to Geneva Rock, and none to Mr. Ewing. *See* Dkt. No. 578 at 7–9. Although it may have answered a few questions needlessly, the jury thus did nothing of substance that was inconsistent with its finding for Mr. Ewing on the hostile-work-environment claim. Finally, when the court polled the jury after the special verdict was published, every juror affirmed that the verdict reflected his or her individual verdict in all respects. *See* Dkt. No. 596 at 11:22–12:25.

For all of these reasons, the court concludes that the jury clearly intended to find for Mr. Ewing on the hostile-work-environment claim but simply overlooked the signpost directing it to skip over the *Faragher-Ellerth* questions if it answered "No" to Question 2. The court sees no

reasonable basis for interpreting the jury's oversight as casting any doubt on its explicit, unambiguous finding that Mr. Ewing was not liable on the hostile-work-environment claim.

2.

Mr. Emuveyan next argues that the award of damages for lost wages and benefits against Geneva Rock is "fundamentally incompatible with the jury's findings that no unlawful conduct warranting such compensation occurred." Dkt. No. 581 at 3. The verdict form reflects that the jury found against Mr. Emuveyan on his claims of retaliation and disparate treatment. *See* Dkt. No. 578 at 5. And although the jury found in Mr. Emuveyan's favor on his hostile-work-environment claim against Geneva Rock (though not against Mr. Ewing), the jury also found (albeit unnecessarily) that the hostile work environment did not result in any tangible employment action. *See id.* at 1–2. It follows, Mr. Emuveyan argues, that there is no claim for which the jury could have awarded him lost wages and benefits against Geneva Rock, and that this inconsistency "indicates either a misunderstanding of the court's instructions, or a mistake in [the jury's] stated findings." Dkt. No. 581 at 3.

The Defendants respond that "[t]he jury may have concluded that there was a 'reasonable probability' that [Mr. Emuveyan] would have been rehired through the grievance process, but that he did not complete the grievance process because of a hostile work environment." Dkt. No. 602 at 12. The Defendants argue that the jury thus could have concluded that "the lost wages and benefits . . . flowed from a hostile work environment" despite the absence of a tangible employment action. *Id.*

The court concludes that this is a "reasonable explanation that reconciles the jury's verdict." *Culp*, 133 F.4th at 983 (cleaned up). Mr. Emuveyan testified that some of his coworkers and some of Geneva Rock's customers called him racial slurs and subjected him to other forms of harassment because he was black. *See, e.g.*, Dkt. No. 588 at 111:14–112:5. He also testified

6

that he initiated the union grievance process to contest his termination but later withdrew from the process because he did not want to "go back to the same environment." *Id.* at 109:9–111:8. In addition, testimony was offered at trial that two Geneva Rock employees, Jesse Taylor and Dennis Moss, had been reinstated through the union grievance process after they were terminated for reasons at least arguably similar to those Geneva Rock asserted for firing Mr. Emuveyan. *See* Dkt. No. 586 at 172:7–173:7. Finally, there was testimony that Mr. Taylor and Mr. Moss were awarded lost wages and benefits when they were reinstated. *See, e.g.*, Dkt. No. 585 at 180:12–181:5. In light of this evidence, the court concludes that the jury could have reasonably found that Mr. Emuveyan suffered lost wages and benefits because of the hostile work environment while also finding that this environment did not involve any tangible employment action.

Mr. Emuveyan presents no argument that these findings cannot "logically coexist" without "destroy[ing] each other," and the court sees no reason why such findings would be "logically incompatible" or "metaphysically impossible." *Culp*, 133 F.4th at 983–86 (cleaned up). Indeed, Mr. Emuveyan agrees to stipulate to this reading of the verdict so long as he is provided the opportunity to seek front pay or reinstatement. *See* Dkt. No. 615 at 5–6.

As Mr. Emuveyan observes, front pay and reinstatement are both potentially available remedies to an employee who "was constructively discharged." *Derr v. Gulf Oil Corp.*, 796 F.2d 340, 342–43 (10th Cir. 1986); *see also Mallinson-Montague v. Pocrnick*, 224 F.3d 1224, 1237 (10th Cir. 2000). Further, Mr. Emuveyan recognizes that front pay and reinstatement are both equitable remedies. *See Winsor v. Hinckley Dodge, Inc.*, 79 F.3d 996, 1002 (10th Cir. 1996). Because "judges resolve equitable claims and juries resolve legal claims," the possibility that he may obtain equitable relief does not entitle Mr. Emuveyan to a new jury trial. *Perttu v. Richards*, 605 U.S. 460, 471 (2025).

Instead, to determine whether to award these remedies, the "court may consider all evidence from trial and . . . may take more evidence at a hearing or by submission." *Hayes v. SkyWest Airlines, Inc.*, 12 F.4th 1186, 1205 (10th Cir. 2021). The court concludes that the best path forward in this case is to hold a hearing to determine whether either equitable remedy would be appropriate here.

**3.**

Mr. Emuveyan also argues that the jury's decision to write "$0" in the spaces provided on the form for awards of nominal damages against Mr. Ewing and Geneva Rock somehow evinces "systemic confusion about or disregard of the legal implications of its decisions." Dkt. No. 581 at 4. It is not entirely clear why Mr. Emuveyan thinks this is so, but he appears to contend either that the jury's failure to award nominal damages against Mr. Ewing and Geneva Rock contradicted its other findings or that the jury should have left the spaces blank instead of writing "$0" in them. Either way, the argument requires little response.

Question 22 instructed the jury that it "must award nominal damages of $1.00 against" a Defendant if it found that Defendant had "violated Section 1981" but Mr. Emuveyan had "failed to prove that he [was] entitled to compensatory damages with respect to that Defendant." Dkt. No. 578 at 12. Based on its finding that Mr. Ewing did not violate Section 1981, the jury properly declined to award nominal damages against him. And although the jury did find that Geneva Rock had violated Section 1981, it awarded compensatory damages against Geneva Rock for that violation. Because this award necessarily reflected the jury's finding that Mr. Emuveyan *was* "entitled to compensatory damages with respect to that Defendant," the jury properly declined to award nominal damages against Geneva Rock. Any argument that the jury's decision not to award nominal damages against Mr. Ewing and Geneva Rock was substantively inconsistent

with its other findings is thus untenable. To the contrary, that decision was *compelled* by those findings.

Nor does the jury's decision to signify its decision not to award nominal damages against Mr. Ewing and Geneva Rock by writing "$0" in the spaces provided on the form for such awards rather than by leaving those spaces blank provide any colorable basis for imputing either confusion or lawlessness to the jury. *See* Dkt. No. 581 at 4. As a substantive matter, there is no difference between leaving these spaces blank and writing "$0" in them. And the only practical difference the court can discern is that writing "$0" in these spaces makes clear that the jury did not somehow overlook them. In sum, the jury's answers regarding nominal damages provide no remotely plausible support for a mistrial or a new trial.

B.

Mr. Emuveyan also contends that the court should declare a mistrial because he was prejudiced by juror misconduct. Mr. Emuveyan argues that the juror who was selected as the foreperson slept during critical testimony, that this juror may have experienced a family loss during the trial that could have affected his ability to remain attentive and impartial, and that the court failed to take action to address this juror's inattentiveness. *See* Dkt. No. 581 at 5–6. More generally, he contends that the jury as a whole was inattentive during his case-in-chief. *See id*.

"As a general rule, juror misconduct, such as inattentiveness or sleeping, does not warrant a new trial absent a showing of prejudice—i.e., that [a party] did not receive a fair trial." *United States v. McKeighan*, 685 F.3d 956, 973 (10th Cir. 2012); *see also Smith v. Aldridge*, 904 F.3d 874, 883–84 (10th Cir. 2018). "To determine prejudice, courts may consider whether the sleeping juror missed large portions of the trial or whether the portions missed were particularly critical." *McKeighan*, 685 F.3d at 974 (cleaned up). "A [party's] general assertions that jurors dozed off during parts of a trial are too vague to establish prejudice." *Id.* (cleaned up).

9

Mr. Emuveyan did not raise concerns that a juror had been sleeping until the twelfth day of a fifteen-day trial. *See* Dkt. No. 594 at 172:24–173:2. When Mr. Emuveyan did raise the issue, the court made clear on the record that it had been watching the juror "pretty closely since probably about the third day of trial." *Id.* at 174:6–7. The court explained that besides "one period of about 10 or 15 minutes," it was confident the juror had been awake throughout the trial because he had displayed "reactions that [were] not consistent with being asleep." *Id.* at 173:19–174:2. The juror had been "looking at the witness[es]," "his eyes . . . appeared to be open," and he had nodded his head and displayed other reactions signaling attentiveness during witness testimony. *Id.* at 176:8–11. The court stands by and reaffirms these observations and conclusions. At trial, defense counsel agreed with the court's assessment that the juror had not been sleeping. *See id.* at 175:3–8.

Mr. Emuveyan speculates that this allegedly sleeping juror may have been the juror who "experienced a family loss during the trial, which may have affected his ability to remain attentive and impartial." Dkt. No. 581 at 5. The court clarifies for the record that Mr. Emuveyan's speculation is incorrect and that the juror he accuses of sleeping during trial was not the juror who experienced a family loss.

Under these circumstances, the court has little difficulty concluding that the jury's foreperson did not engage in misconduct and, if he did, that Mr. Emuveyan was not prejudiced by it. The court closely watched the juror throughout the trial; both the court and defense counsel agreed that the juror had not been sleeping and, if he had, it was not for more than fifteen minutes of the fifteen-day trial; and Mr. Emuveyan waited until the trial was nearly over to raise the issue. Further, Mr. Emuveyan does not identify any portion of the trial that this juror missed

that was "particularly critical," and his "general assertions" that this juror "dozed off during parts of a trial" are thus "too vague to establish prejudice." *McKeighan*, 685 F.3d at 974 (cleaned up).

Mr. Emuveyan's assertions that he was prejudiced by the alleged general inattentiveness of the jury as a whole during his case-in-chief are also too vague to establish prejudice. Mr. Emuveyan "has not shown that the jury ignored any particularly important items." *United States v. Tierney*, 947 F.2d 854, 868 (8th Cir. 1991). Moreover, to the extent the jurors' interest may have waned during Mr. Emuveyan's case-in-chief, the court concludes that any apparent lack of enthusiasm was likely attributable to the sequence and manner in which Mr. Emuveyan's counsel chose to present his case in chief—a party cannot reasonably expect to keep the jury riveted when his counsel begins a trial by examining a human resources officer for almost four days straight, as Mr. Emuveyan's counsel did here. And while the jury may well have been bored by the sequence and manner in which Mr. Emuveyan's case-in-chief proceeded, that does not mean it was not paying attention.

### III.

The court will next consider the Defendants' motions to redact the trial transcript and to seal portions of Mr. Emuveyan's post-trial motion briefing. The Defendants request the redaction of portions of the transcript of the fifteenth day of trial to protect Geneva Rock's confidential financial information. *See* Dkt. No. 610 at 2; Dkt. No. 609. For the same reason, the Defendants also request that the court seal Docket Number 631, Plaintiff's Opposition to Defendants' Renewed Motion for Judgment as a Matter of Law and for Reduction of Punitive Damages, while allowing a redacted version of the filing to appear on the public docket. *See* Dkt. No. 633 at 2.

It is well settled that "courts [may] refuse[] to permit their files to serve . . . as sources of business information that might harm a litigant's competitive standing." *Nixon v. Warner*

*Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). To overcome the "common-law right of access to judicial records," however, a "party seeking to seal records must articulate a real and substantial interest that justifies depriving the public of access to the records that inform [the court's] decision-making process." *JetAway Aviation, LLC v. Board of Cnty. Comm'rs of Cnty. of Montrose, Colo.*, 754 F.3d 824, 826 (10th Cir. 2014) (cleaned up).

The court has little difficulty concluding that the information at issue here—including details regarding Geneva Rock's financing of real property and its specific profits and overhead costs for various years—is "precisely the type of sensitive business information that should be sealed and kept confidential." *AH Aero Serv., LLC v. Heber City*, No. 2:17-cv-1118-HCN-DAO, 2020 WL 6135819, at *3 (D. Utah Oct. 19, 2020) (collecting cases).

Further, although the issue is not free from doubt, the court concludes that the Defendants did not waive the confidentiality of this information either by testifying in open court or by arguing for a reduction of the punitive damages award. *See* Dkt. No. 622. Mr. Emuveyan presents no argument that the information the Defendants seek to protect is "no longer confidential" because it is "widely available." *Luo v. Wang*, 71 F.4th 1289, 1304 (10th Cir. 2023). To the contrary, the testimony the Defendants seek to redact was made public only to those present in the courtroom at the time it was presented. As the Tenth Circuit has recognized, "a practical distinction . . . exists between [material] introduced into the court's public record at one point in time" and material "made perpetually available for all the world to see on the court's electronic docketing system." *Braun v. Medtronic Sofamor Danek, Inc.*, 719 F. App'x 782, 801 n.8 (10th Cir. 2017) (unpublished). Further, the Defendants have repeatedly attempted to limit the disclosure of this sort of confidential financial information throughout the course of this litigation. *See, e.g.*, Dkt. No. 17; Dkt. No. 595 at 172:15–25.

The court thus concludes that the Defendants have met their burden of justifying their request to redact specific portions of the trial transcript for the fifteenth day of trial and to seal Mr. Emuveyan's response to their post-trial motion relating to punitive damages.

\*   \*   \*

For the foregoing reasons, the court will hold a hearing to determine whether Mr. Emuveyan is entitled to front pay or reinstatement. Docket Number 581, Plaintiff's Renewed Motion for a Mistrial, is otherwise **DENIED**. Docket Number 610, Defendants' Motion for Leave to Request Redactions to Trial Transcript, and Docket Number 633, Defendants' Motion to Seal Portions of Plaintiff's Opposition to Defendants' Renewed Motion for Judgment as a Matter of Law and for Reduction of Punitive Damages, are **GRANTED**. The court reporter shall make the requested redactions to Docket Number 597, Jury Trial Day Fifteen, and the redacted transcript shall be made available on the public docket. Docket Number 631, Plaintiff's Opposition to Defendants' Renewed Motion for Judgment as a Matter of Law and for Reduction of Punitive Damages, shall remain under seal, and Mr. Emuveyan shall separately file on the public docket a version of this response that is redacted as the Defendants have requested. The parties' other post-trial motions and bills of costs will remain pending until the court determines whether front pay or reinstatement is warranted.

**IT IS SO ORDERED**.

Dated this 30th day of September, 2025.

BY THE COURT:

_____
Howard C. Nielson, Jr.
United States District Judge